## THE HEIRS OF NESTOR CLAY v. TACITUS CLAY.

A grantee from the government of Coahuila and Texas, who had acquired land under the colonization law of 1825, could not, previous to the Decree of 26th of March, 1834, alienate the same before the expiration of six years from the time of the concession to him.

The 30th Article of the Decree of March 26th, 1834, has reference only to the duties and obligations of the empresarios or contractors to the government, which were required to be strictly and fully performed, and does not refer to the conditions imposed by the law of 1825 upon the colonists or settlers who received lands in accordance with its provisions.

The 36th Article of the Decree of March 26th, 1834, removed the prohibition of sale imposed by former laws, and authorized all settlers who had received titles to their lands, as well those who had acquired lands under the law of 1825 as any others, to sell their lands at any time. Although this point has never before been expressly and authoritatively ruled by this court, yet the previous decisions have proceeded upon this view of the effect of the Decree of March 26th, 1834. The case of Atkinson v. Bell, 18 Tex. Rep., 474, cited and approved.

After the Decree of March 26th, 1834, a grantee from the government of Coahuila and Texas, who had received title to his land in 1831, was competent to alienate his land.

Under the laws of the Republic of Mexico, an unnaturalized alien was incapable of acquiring title to real estate. A sale of land, therefore, to such an alien was a nullity, notwithstanding his vendor was competent to sell.

APPEAL from Fayette. Tried below before the Hon. John Hancock.

This was an action of trespass to try title, and also for damages, instituted by the appellants as heirs of Nestor Clay against the appellee, for the recovery of one-fourth of a league of land in Washington county. The suit was originally brought in Washington county, at the Fall Term, 1851, of the District Court. At the Spring Term, 1853, a trial was had, but resulted in a mis-trial on account of disagreement of the jury. At the Spring Term, 1854, the venue was changed, by consent of parties, to the county of Fayette. The cause came to trial at the Fall Term, 1854, when there was verdict and judgment for appellee, defendant below.

The grant to Nestor Clay, under whom both parties claimed title to the land in controversy, was made to him as an augmentation grant by the government of Coahuila and Texas, on the 18th day of March, 1831.

The petition was in the usual form, but the subsequent pleadings were multifarious, and much complicated by repeated amendments on both sides. Among the various defences set up by the appellee, he alleged that he purchased the land in controversy from Nestor Clay on the 15th of May, 1830, for a valuable consideration, and went into possession of the same under the purchase with the knowledge and consent of Nestor Clay, and made valuable improvements thereon; and further, that Nestor Clay, by various acts and declarations, afterwards and before his death in 1835, recognized and confirmed the sale.

The plaintiffs, by amended petition, replied, that the alleged sale was made before Nestor Clay received title to the land, and was consequently void; that the sale and all acts of confirmation were made and done within six years from the date of the grant, and

were therefore null and void under the prohibitions of the colonization law of 1825; and further, that the defendant, at the date of the sale, and thenceforward until long after the death of Nestor Clay, was an alien to the State of Coahuila and Texas and to the Republic of Mexico, and was thereby incapacitated from acquiring or holding real estate within the limits of the Republic.

The defendant thereupon excepted to so much of the amended petition as averred his alienage, and the court sustained the exception.

The acts of Nestor Clay put in evidence by the defendant as establishing a confirmation of the sale were, that the land in controversy was pointed out by Nestor Clay in 1833, to a witness, as the land of the defendant, and the witness thereupon took possession of it as the agent and tenant of the defendant; that, in 1834 or 1835, Nestor Clay admitted and stated that he had sold the land to the defendant, and had received the consideration therefor; that, in 1835, the land in controversy was, by direction of Nestor Clay, surveyed for the defendant; and that the improvements upon the land made by the agents and tenants of the defendant were made with the full knowledge of Nestor Clay, and without objection on his part.

The opinion comprises all other facts necessary to be stated.

*John Sayles*, for appellants. The only questions open for discussion, are:

1st. Whether Nestor Clay could, at any time before his death in June, 1835, sell his land.

2d. Whether Tacitus Clay, being an alien and non-resident, could acquire title prior to that date. Both of these questions were decided in the affirmative by the court below.

It has been decided by this court, that colonists acquiring land under the colonization law of 1825, Decree 16, could not alienate them until they had completed their cultivation—that is, until after the expiration of six years from the date of the title. If the law of 1825 continued in force as to titles under it, then Nestor Clay could, at no time during his life, alienate it, and it still belongs to his heirs.

The Heirs of Nestor Clay v. Tacitus Clay.

By Decree 190, of the 28th of April, 1832, Laws and Decrees, p. 193, Decree No. 16 was repealed; but, by Art. 16, p. 191, it was provided that no change should be made with regard to concessions stipulated to settlers under that decree. Titles issued under Decree 16 still remained burdened with the conditions attached to them.

By Decree No. 272, of the 26th of March, 1834, a new system was introduced in regard to public lands. The colonization laws were repealed, and the vacant lands required to be sold at auction. A part of the purchase money was required in hand, and the balance in two annual instalments—the title to become null on failure of payment. (Art. 6, p. 248.)

By Art. 9, p. 248, certain purchasers were required to settle upon the land, and by Art. 36, p. 252, it is provided that settlers who shall have received titles to their lands may sell them at any time, the land remaining bound for the payment, &c. To whom is reference made by the term "settlers?" Clearly the class of persons spoken of in the law—purchasers who were foreigners, and who were required to settle upon the land.

Decree No. 16 was repealed two years before. No clause of Decree No. 272 refers to them; it contains no provision in regard to their titles. It substituted a new system, and all of its provisions relate to the details of that system. In determining the meaning of a term used in the law, we must look to the text and context; to the subject of legislation, and the object had in view.

For instance, by Art. 9, p. 248, it is provided that purchasers not belonging to the State shall settle on their lands within one year, under penalty of forfeiting them. Surely this provision cannot be held to apply to those who had purchased lands under Decree 16. That class of persons was not within the purview of the law; nor were colonists or settlers who had acquired their lands previous to the date of this law.

As before remarked, this law introduced a new system, and all of its provisions relate to the acquisition of lands under that system.

2. If the above views are not correct, then it is insisted that the defendant, being an alien and a non-resident, could acquire no title to the land by a parol sale. The doctrine is fully discussed

by this court in the case of Holloman v. Peebles, and clearly established. Both by the Spanish law and by the Constitution of the Republic of Mexico, no alien could acquire land in the Republic. (Const. Law, Art. 13, Escriche Dic., verb. Estrangero, p. 668.)

In this case the defendant must rely upon a verbal sale, one of the ingredients of which is possession. How could an alien and non-resident, being prohibited from acquiring land, take possession? How could he perform one of the acts essentially necessary to a valid verbal contract?

All sales of this character sustained by this court have been in cases where the parties could not be placed in *statu quo*. In this case, the plaintiffs offer to refund the purchase money and interest, which was tendered in court. By the judgment of the court, the defendant could have recovered pay for his improvements. No such equities have grown up as to control this court to execute a contract made in violation of law and of the policy of the country.

*J. E. Shepard*, also, for appellants.

*Giddings*, for appellee. 1st. The question of alienage relates to the condition of the parties at the time of filing the suit; this was in 1851.

2d. A defendant who is an alien, if in possession, can defend against all the world except the government. (Orr v. Hodgson, 4 Wheat., 453; Fairfax's Dev. v. Hunter, 7 Cranch, 603.)

3d. The act of annexation had a retroactive operation, and confirmed all the rights of aliens, and cured any defect where no actual forfeiture had taken place, and had the same effect as naturalization. (Moore v. White, 6 Johnson's Ch. R., 360; Jackson v. Beach, John. Ch., 399; Craig v. Radford, 3 Wheat., 594; Beach v. Culverhouse, 3 Johnson's Cases, p. 467.)

The authorities on the above are uniform, and might be cited without limit.

BELL, J. The record presents two principal questions for our consideration. The first one of these questions is, could the

grantee from the government of Coahuila and Texas, who had acquired land under the colonization law of 1825, alienate the same before the expiration of six years from the time of the concession to him? The 27th Article of the colonization law of the 24th of March, 1825, provided that "other settlers" besides the contractors and the military, "shall be authorized to alienate their land when they shall have completed the cultivation thereof, and not before." It is contended by the counsel for the appellants, that this provision of the law of 1825 was not repealed by the Decree of the 26th of March, 1834, and, therefore, that a sale made in 1835, by one who received a grant of land in 1830, or 1831, was void, inasmuch as the term of six years had not elapsed between the date of the grant and the date of the sale. In support of this view, we are cited to the 30th article of the Decree of the 26th of March, 1834, which provides, "hereafter no colonization contract shall be made, and those heretofore made shall be strictly fulfilled, and in entire accordance with the law of the 24th of March, 1825." We think it quite clear, that this article has reference only to the duties and obligations of the empresarios or contractors with the government, which were required to be strictly and fully performed, and does not refer to the conditions imposed by the law of 1825 upon the colonists or settlers who received lands in accordance with its provisions. The 36th article of the Decree of the 26th of March, 1834, provided that "settlers who shall have received titles to their lands may sell them at any time, and the purchaser shall remain with the charge of fulfilling the duties of the vendor to the State, and the land shall be liable for the responsibility." We are of opinion that this article intended to remove the prohibition of sale imposed by former laws, and authorized all settlers who had received titles to their lands, as well those who had acquired lands under the law of 1825 as any others, to sell their lands at any time; and although this point has never before been expressly and authoritatively ruled by this court, the decisions have proceeded upon the view now taken of the effect of the Decree of the 26th of March, 1834. Thus, in the case of Atkinson v. Bell, 18th Tex. 474, Judge Hemphill said: "These prohibitions," meaning

the prohibitions of sale within six years, contained in the laws of 1825 and 1832, "were modified by article 36 of Decree No. 272, of the 26th of March, 1834, authorizing settlers, after they had received their titles, to sell their lands." In the same case, it was also said: "We have held, in various cases, in effect, that prior to the law of the 26th of March, 1834, sales made by colonists or settlers of their head-rights before the lapse of six years from the date of the title, were void; and we have also held, that after the law of the 26th of March, 1834, up to the date of the Constitution of the Republic, sales of lands by settlers, and agreements for the sale of their land, made before the final titles were issued to them, were nullities. (Robbins' Heirs v. Robbins' Heirs, 3 Tex., 496; Spillers v. Clapp, 3 Tex., 498; Emmons v. Oldham, 12 Tex., 18.)" We are of opinion that Nestor Clay, having received title to his land in 1831, was at liberty to sell the same after the passage of the law of the 26th of March, 1834; and this was the view taken of this question by the judge who tried the case below.

The other principal question presented for our consideration is raised by the ruling of the court below upon the exception to the amended petition filed by the plaintiffs on the 16th of March, 1852. The amended petition alleged that, "at the time of said pretended purchase, the defendant (Tacitus Clay) was an alien, and not a resident of the State of Coahuila and Texas, or of the Republic of Mexico, and incapable of taking title to real estate." This amended petition was excepted to by the counsel for the defendant, and the exception was sustained by the judge before whom the exception was taken. This ruling of the court raises the very important question, could an alien and non-resident acquire title to land by the laws of the Republic of Mexico, by purchase? This question was much considered and investigated by the former chief justice of this court, but never authoritatively decided by the court. The researches of counsel and our own, have enabled us to add but little light to that which was thrown upon the subject by the opinion of Judge Hemphill in the case of Holloman v. Peebles, 1 Tex. But we are of opinion that we can not err in holding that, under the laws of Mexico, an alien was

incapable of acquiring real estate. In the learned dictionary of Escriche, under the word "Estrangero," we find the following: " El estrangero no puede adquirir en la Republica" (meaning the Republic of Mexico) " propriedad raiz, si no se ha naturalizado en ella, casare con Mejicana, y se arregla a lo damas que prescribe la ley relativa a estes adquisiciones;" which may be translated thus: " The foreigner or alien cannot acquire real property in the Republic, (meaning the Mexican Republic,) unless, having been naturalized, he shall marry a Mexican, and observe, moreover, that which the law prescribes relative to these acquisitions." So, in Arrilaga's Recopilacion de leyes, decretos, &c., of the Republic of Mexico, we find a Decree of the 12th of March, 1828, on the subject of passports and the mode of acquiring property by foreigners or aliens, the 6th article of which provides that foreigners introduced and established in conformity to law, are under the protection of the laws, and shall enjoy the civil rights which the laws concede to Mexicans, with the exception of the right to acquire landed property, "which," it is said, "according to the existing laws, those not naturalized cannot obtain." We are of opinion, then, that the court erred in sustaining the exception to the amended petition which asserted the alienage of the defendant; and that, although Nestor Clay had the right to sell the land granted to him, after the 26th of March, 1834, Tacitus Clay, if he was an alien and non-resident, as the amended petition alleged, had no capacity to take the land, or to acquire any kind of title to the same; and that the sale by Nestor Clay was a nullity, if his vendee, as was alleged, was an alien and non-resident.

These views lead to the reversal of the judgment, and we do not deem it necessary to discuss minor questions which may or may not arise upon another trial.

Judgment reversed and cause remanded.

Reversed and remanded.