## Case No. 5,996.

### HAMMEKIN v. CLAYTON.

[2 Woods, 336;[1] 2 Cent. Law J. 188.]

Circuit Court, W. D. Texas. Jan. Term, 1874.

REAL PROPERTY — RIGHT OF ALIENS TO HOLD AT CIVIL AND COMMON LAW—SECRET TRUST.

1. Where by the laws of a state aliens are prohibited from acquiring and holding real property, a deed made by A. to B. upon a secret trust for C. who is a foreigner. A. having no knowledge of the trust, is not void; the trust only is void.

2. By the law. of Mexico. which was in force in Texas from the 17th of March, 1836 to the 20th of January. 1840, aliens were prohibited from holding lands except by titles issuing directly from the government.

[Cited in Kircher v. Murray, 54 Fed. 621.]

3. By the common law, an alien might hold real estate against every one and even against the government until office found.

4. The same rule prevailed in the civil law of Mexico and Texas. Therefore, when an alien to the republic of Texas took a deed not emanating from the government to lands within the territory of the republic, his title was good against all persons until after some proceeding analogous to office found by which his title was declared void.

This was an action of trespass to try titles. It had been tried by DUVAL, District Judge, and a jury. and came up on motion of plaintiff for a new trial, which was heard by WOODS, Circuit Judge, and DUVAL, District Judge.

Geo. F. Moore and Charles S. West, for plaintiff.

Wm. M. Walton, for defendant.

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

WOODS, Circuit Judge. The case was an action of trespass to try titles, and the facts were substantially as follows: The plaintiff claimed title under an eleven league grant made by the state of Coahuila and Texas to Emanuel Crescentia Rejon, dated November 8, 1833. On the 11th of April, 1836, by a deed of that date executed in the City of Mexico, Rejon conveyed the land in question to one Mrs. Laguerenne. On the 27th of September, 1836, Mrs. Laguerenne executed at the City of Mexico an instrument of that date by which she declared that she held the lands in trust for the plaintiff Hammekin, and conveyed the same to him. On the 28th of July, 1840, Mrs. Laguerenne united with her husband in a deed of that date, whereby they again conveyed the land to the plaintiff Hammekin. The plaintiff was a native of the state of New York, and immigrated to the republic of Mexico in 1831, and became domiciled in the City of Mexico where he remained until 1836. In April, of that year, he purchased the land in question and paid for it 3,000 silver dollars. The deed, therefore, was made to Mrs. Laguerenne who was a native of Mexico and had never resided out of that country. The deed was made to her in trust for the plaintiff, and the reason why it was not made directly to the plaintiff was that the law of the republic of Mexico as the parties supposed, prohibited a foreigner from holding real estate situate in the republic. On March 2, 1836, the independence of the republic of Texas was declared, and on the 17th of the same month, the constitution of the Texan republic was adopted. These facts were at the time of the execution of the deed to Mrs. Laguerenne unknown to her and to Hammekin. In April, 1836, after the conveyance to Mrs. Laguerenne, the plaintiff took from her a power of attorney to sell the land, and started for Texas. He was shipwrecked and did not reach his destination until June, 1836, at which date he became a citizen of the republic of Texas, and continued to reside in Texas as a citizen until 1845. In 1838, he paid the land dues on the lands. In 1845, he left Texas and again became a citizen of the United States, and so continued until the commencement of this suit, being at the latter date a citizen of New York. In 1838, Mr. and Mrs. Laguerenne removed to and resided in New Orleans, and while there, executed the deed to plaintiff, dated July 28, 1840. In 1840 or 1841, they returned to the City of Mexico, where Mr. Laguerenne died, and where Mrs. Laguerenne, who is still living, resides. The defendant was in possession of the land in controversy at the commencement of the suit, but showed no title whatever. The constitution of the republic of Texas (section 10, General Provisions; 1 Pasch. Dig. p. 37) declares: "No alien shall hold land in Texas except by titles emanating directly from the government of this republic."

Upon this state of facts, the court instructed the jury that the deed from Rejon to Mrs. Laguerenne of April 11, 1836, was absolutely void, and conveyed no title to the grantee. In pursuance of this instruction, the jury returned a verdict for defendant. The motion for new trial is based on the alleged error of the court in giving such instruction to the jury. The defendant insists that the instruction was correct, and that the deed was void upon two grounds: 1. Because it was made with the purpose to evade the laws of the state of which Mrs. Laguerénne was a citizen, and where the plaintiff was domiciled; and 2. Because, at the date of the deed, the republic of Texas, within which the land was situated, had declared its independence and adopted a constitution, and both the constitution and laws of Texas forbid that an alien should hold land except by titles emanating directly from the government of the republic. We will notice these two points in their order.

It is claimed by the plaintiff that the law of Mexico at the date of the deed in question did not absolutely prohibit all foreigners from acquiring and holding real estate in Mexico, and to sustain this view, he cites the 6th, 9th and 10th sections of the decree of March 12, 1828, found on page 349 of Schmidt's Civil Law of Spain and Mexico. In the view we take of the case, it is unnecessary to decide this question. Conceding that the law of Mexico was as claimed by defendant, we think it does not follow that the deed to Mrs. Laguerenne was void. There is no evidence in the case that Rejon, the grantor, knew that the deed was in trust for Hammekin. We think that the deed operated to convey the title out of Rejon, and that the most that could be claimed was that the trust was void. Hubbard v. Goodwin, 3 Leigh, 492.

The main question in the case is the second, namely: Was the deed in question by the constitution and laws of the republic of Texas absolutely void, so as to convey no title to Hammekin? Between the 17th of March, 1836, and the 20th of January, 1840, the laws of Mexico, unless where modified by the constitution and statutes of the republic of Texas, were in force in Texas. Barrett v. Kelly, 31 Tex. 481; Hanrick v. Barton, 16 Wall. [83 U. S.] 166. It becomes important, therefore, to determine whether by the Mexican law the deed of Rejon was void and conveyed no title. Upon this point the decided weight of authority is, in our opinion, with the negative of this proposition. · The rule of the common law is well settled that an alien may hold real estate against every one, and even against the government, until office found. 1 Com. Dig. tit. "Alien C." 2; Craig v. Leslie, 3 Wheat. [16 U. S.] 589; Bradstreet v. Supervisors of Oneida Co., 13 Wend. 546 That this is the rule of the civil law of Mexico is shown by the following authorities: 2 Escreche Partidos Hispano Mexicanos, 696; 2 Sala Mexicano, 240; Ramires v. Kent, 2

Cal. 558; People v. Folsom, 5 Cal. 378; Merle v. Mathews, 26 Cal. 478.

In the last cited case the court says: "At common law, a conveyance of land to an alien was a cause of forfeiture to the crown of such lands, not only on account of the alien's incapacity to hold them, but likewise on account of his presumption in attempting by an act of his own to acquire real property (2 Bl. Comm. 274), but notwithstanding, until office found, the title remained in him. So far as we are advised, the consequences that might follow this species of infraction of the law were substantially the same under the Mexican law as at common law, and until the denouncement, the alien grantee of land could hold and possess it as his own property." So in Racouillat v. Sansevain, 32 Cal. 386, the court declares that "the question as to the right of a nonresident alien to hold property at common law, and as we understand it under the civil law, was a matter between the alien and the government, and could not be called in question in a collateral proceeding between individuals. The proceeding at common law to divest an alien of property purchased is by an inquest of office, and until office found, an alien may hold real estate. Under the civil law, there was some analogous proceeding." In Osterman v. Baldwin, 6 Wall. [73 U. S.] 121, the facts run almost on all fours with the case at bar. In 1839, prior to the admission of Texas into the Union, Baldwin, a citizen of New York and an alien to Texas, bought and paid for some lots in the city of Galveston. It was objected to Baldwin's title, that when his purchase was made, Texas was a foreign country, with a constitution forbidding aliens to hold real estate. The supreme court held that "the defendants could not object on that ground; that until office found, Baldwin was competent to hold land against third persons; no one has any right to complain in a collateral proceeding if the sovereign does not enforce his prerogative."

But it is insisted, that the supreme court of Texas has settled the law otherwise, and that this court should follow the courts of Texas which have established the contrary doctrine as a rule of property in the state. We are cited to the cases of Holliman v. Peebles. 1 Tex. 673; Yates v. Iams. 10 Tex. 168; Clay v. Clay, 26 Tex. 24; Lacoste v. Odam, 26 Tex. 458,—and other cases, to show that the ruling of the supreme court of the state has been, that a deed of lands to an alien, under the laws of the republic of Mexico, was absolutely void, and conveyed no title. We should feel bound to follow these decisions of the supreme court of Texas, had they not been unsettled by later adjudications. The case of Barrett v. Kelly, 31 Tex. 476, is subsequent in date to all the cases cited to show the invalidity of the deed of Rejon. and is entirely inconsistent with those cases; and, though not in words, yet in effect it overrules them. The facts in that case were, that

Wharton, a citizen of Mexico, on the 13th of April, 1833, executed a conveyance for lands in Texas to J. and W. D. Barrett, who were aliens, and the point was distinctly made in the case, that the alienage of the Barretts gave Kelly, who claimed under a junior grant, the better title. But the court sustained the Barrett title and took the same view of the Mexican law as was taken by the supreme court of California in the cases above cited. The learned judge, who delivered the opinion, says: "From 1833 to 1840, the defendants (the Barretts) were liable to have their land divested from them by due process of law, according to the laws of Mexico. There is no allegation that any court or political authority ever adjudicated upon the alienage of defendants, while they were such, and there can be as little question, that without some process of this kind the rights of the parties to the land were never divested." Pages 481, 482.

These remarks of the court and its action in the case are entirely inconsistent with the doctrine in Clay v. Clay, supra, that the deed to the Barretts was absolutely void, and conveyed no title. In the case of Settegast v. Schrimpf, 35 Tex. 341, the supreme court of the state appear to cite with approbation the case of Osterman v. Baldwin, supra. We are of opinion, therefore, that the later and better view of the supreme court of this state is, that under the Mexican law a deed to an alien was not void, but conveyed an estate subject to be divested upon a proceeding by the government for that purpose. Our conclusion is, therefore, that a new trial should be granted on account of the error of the court in instructing the jury that the deed from Rejon to Mrs. Laguerenne was void and conveyed no title.

[DUVAL, District Judge. In instructing the jury, upon the trial of this case, that the deed from Rejon to Mrs. Laguerenne was a nullity, and passed no title under the then existing laws of Mexico, I supposed that I was following what then seemed to me to be the settled construction given to those laws by the supreme court of this state. At the same time I stated that this construction was not in accordance with my own views upon the subject. Since the argument of this motion for a new trial, I have re-examined not only the authorities read on the trial, but others submitted since. After a more thorough consideration of the questions involved, my conclusion is that I was mistaken in supposing that the law had been definitely settled, as it then appeared to me to have been, by the supreme court of this state, in the cases of Holliman v. Peebles [1 Tex. 673]; Yates v. Iams [10 Tex. 168]; Clay v. Clay [26 Tex. 24]; and Lacoste v. Odom [Id. 458.] If these cases are not absolutely overruled (so far as the present question is concerned) by the later cases of Barrett v. Kelly [31 Tex. 476] and Settegast v. Schrimpf [35 Tex. 323], support-

ed, as they seem to be, by the case of Oster-man v. Baldwin, 6 Wall. [73 U. S.] 121, they at least leave the question undetermined and doubtful, and it can not be said to have been clearly settled by the supreme court of this state. Such seeming to me to be the case, and this court not being bound to follow any doubtful rule of construction, my opinion is that a new trial should be granted, and in this, I concur with the circuit court judge.][2]