### EUGENE WILLIAMS v. C. P. BENNETT ET AL.

#### No. 20.

1. **Second Suit in Trespass to Try Title.**— The right to bring a second suit in an action of trespass to try title, pending at the adoption of the Revised Statutes, is assignable, and passes to the vendee of the plaintiff in the first suit.

2. **Alien Could Take Land Under a Deed in the Republic of Texas.**—A deed for land in Texas executed in Mexico, May 25, 1836, to an alien, conveyed to such alien title to the land, that could only be defeated by some proceeding in the nature of office found. No such proceedings having been taken, such title is a defense in an action by the heirs of the original grantee of the land against a tenant in possession.

APPEAL from McLennan. Tried below before Hon. J. R. DICKERSON.

*Alexander, Winter & Campbell,* for appellant.—1. The plaintiff has a right to a second action of trespass to try title to test the title to the land in controversy, and his right is not res adjudicata on the ground that he was not the original plaintiff. Pasch. Dig., 893, 894; Acts Leg. 1840; Acts Leg. 1844; Bitner v. Land Co., 67 Texas, 344; Edgar v. Galveston, 46 Texas, 432; Magee v. Chadoin, 44 Texas, 488; Steed v. Petty, 65 Texas, 495; Hall v. Wooters. 54 Texas, 232; Lanier v. Perryman,

59 Texas, 108; Sanchez v. Ramirez, 58 Texas, 313; Blessing v. Edmonson, 49 Texas, 336; Connoly v. Hammond, 58 Texas, 20; Atchison v. Owen, 58 Texas, 614; Spence v. McGowan, 53 Texas, 34.

2. No Supreme Court has passed upon the issue involved in this case, arising upon a sale to an alien after December 15, 1835, and prior to the adoption of the common law, January 20, 1840. Reference is here made to all cases which have attempted to discuss this question since Clay v. Clay and Lacoste v. Odam, 26 Texas. Andrews v. Spear, 48 Texas, 568; Barrett v. Kelly, 31 Texas, 481; Phillips v. Moore, 100 U. S., 208; Osterman v. Baldwin, 9 Wall., 116; Jones v. McMasters, 20 How., 8; Matthews v. Merle, 26 Cal., 475; Wescott v. Baker, 11 S. W. Rep., 159.

3. The civil law was the law of the Republic of Texas on May 25, 1836, except so far as changed by the laws of Mexico and the Constitution of March 17, 1836. Const. 1836, Pasch. Dig., 35; Barrett v. Kelly, 31 Texas, 481; Phillips v. Moore, 100 U. S., 208; Escriche, verb. Derecho Civil, 546; Derecho Espanol, 545; Derecho Romano, 547.

4. The introduction of the common law, by the general principles of the law of nations and by the express terms of the act adopting it, January 20, 1840, did not interfere with rules of property existing under the Constitution of 1836 and previous laws. Acts January 20, 1840, Pasch. Dig., 25; Rev. Stats., art. 4812; Railway v. McGlynn, 114 U. S., 542.

5. There are three periods of the law governing aliens in Texas necessary to be distinguished each from the other. (1) The law previous to December 15, 1836. (2) The law from December 15, 1836, to January 20, 1840. (3) The law after January 20, 1840, when the common law was adopted.

(1) Laws previous to December 15, 1836. Law of March 12, 1828, to be found in 2 Partidas, 260, and in Legis logi Mexicana (1825–1828), 155, and in part copied and translated in 1 Texas, 749; Law of 1791, cited in 1 Texas, 712; Law of 1452, cited in 1 Texas, 711; 1 Cool. Blacks., 371; Laws of Indies, May 18, 1680; Ordinances of Intendents, Dec. 4, 1786, Const. of Cortes, March 12, 1812; Cedula Dec. 23, 1818.

(2) Laws between December 15, 1836, and January 20, 1840. Law Dec. 15, 1836, cited in 26 Texas, 30, 31; Escriche, verb. Extrangero, arts. 12, 13; Riviera's Collect, 381, law of 1835; Const. March 17, 1836, Pasch. Dig., 35 (sec. 1), 37 (sec. 10).

(3) Laws after January 20, 1840. Act adopting common law, Jan. 20, 1840, Pasch. Dig., 254; Laws of Mexico illustrating this question; Law of March 11, 1842, Hall's Mex. Laws, sec. 695; Law of Feb. 1, 1856, Hall's Mex. Laws, sec. 707; Law of March 10, 1857, Hall's Mex. Laws, sec. 235.

6. Aliens under the civil and Mexican laws were of two classes, and known as (1) naturalized and domiciled foreigners, and (2) transient and nonresident foreigners. The first had many privileges denied the

second class. Ham. Mex. Laws, arts. 8–12; Escriche, verb. Extranjero; Law of 1842, Hall's Mex. Laws, sec. 695; 1 Texas, 712–714; Law of March 12, 1828; Law of Dec. 15, 1835.

7. All authorities agree that the domiciled and naturalized foreigners hold title to real estate by reason of becoming domiciled or naturalized, and that transient or nonresident foreigners could not take a perfect title. A question in later years has arisen as to whether the second class of foreigners were incapable of acquiring title to real estate, or were merely incapable of holding title after its acquisition, being subject to an inquest of office or like proceeding to adjudge its forfeiture.

8. If incapable of acquiring title, a sale to a nonresident foreigner (alien) was a nullity; if capable of acquiring, but incapable of holding title, such a sale could be avoided only upon inquest of office or like proceeding to declare the forfeiture.

9. (1) The policy of the civil and Mexican law did not allow anything to pass by a sale to a nonresident foreigner negotiated by a private subject. Nothing passed to the nonresident which could be forfeited, and hence there was no forfeiture of his title. He took none.

(2) By law 6, title 5, book 3, Recopilacion Novissima (1 Texas, 710), it was enated that no subject could sell real estate to a nonresident, being a decree declaring the civil law. 1 Cool. Blacks., 371. This law 6 also provided, that the title of the subject—not the alien—might be forfeited. This was a step beyond the civil law. But no method of forfeiture was provided, nor was there any in existence at the adoption of the Constitution in 1836. Gen. Prov., sec. 10.

(3) It is clear there could be no forfeiture of Laguerenne's right in the land sold. He took none by his deed of May 25, 1836. Under law 6, Rabago might have been punished and his land forfeited, if there had been also provided a proceeding for forfeiture and the forfeiture had been demanded. Until then Rabago still owned the land. But no such proceeding had been provided when the Constitution of 1836 was adopted. Law 6, title 5, book 3, R. N., 1 Texas, 710; Const. 1836, Gen. Prov., sec. 10; Law Dec. 15, 1835; Law March 12, 1828; 1 Cool. Blacks., 371; Clay v. Clay, 26 Texas, 24; Lacoste v. Odam, 26 Texas, 548; Escriche, Extranjero, arts. 12, 13. Search the civil and Mexican law and note absence of all authority prior to the decision of Barrett v. Kelly (decided by the unconstitutional military court), holding a contrary doctrine. Where is authority for such a forfeiture?

10. There was no proceeding like inquest of office under the civil and Mexican law, applicable to private sales. Clay v. Clay, 26 Texas, 24; Cool. Blacks., 371; Touchard v. West, 5 Cal., 306; Halliday v. West, 6 Cal., 525; Const. 1836, sec. 10, Gen. Prov.

11. Several ill considered cases say denouncement under the civil and Mexican law is the corresponding remedy to inquest of office at common

law.  This is clearly a mistake.  Denouncement corresponds more nearly to our file on vacant lands than any other proceeding.  It is not a remedy for adjudging a forfeiture, but the Mexican method of filing on land, alike applicable to land always vacant as to land made vacant by act of a grantee from the State.  It is not prosecuted by or for the State, but by and for the individual availing himself of it.  Denouncement does not apply to sales to aliens by private contract, but to files by private individuals on public lands already vacant or abandoned, etc.  Clay v. Clay, 26 Texas, 24; Lacoste v. Odam, 26 Texas, 548; Holliman v. Peebles, 1 Texas, 710; Touchard v. West, 5 Cal., 306; Halliday v. West, 6 Cal., 525; Law of March 12, 1828, arts. 6, 11; Hall Mex. Laws, 224–230; Ham. Mex. Laws, 232; Escriche, Denuncia.

12.  There is a clear distinction between the effect of a public grant to a nonresident foreigner or to a colonist abandoning the grant, and the effect of a private sale to a nonresident alien.  As to the first, a forfeiture would result in the land remaining the property of the State, who was the grantor, thereby becoming or remaining vacant, subject to denouncement by a Mexican for his own benefit.  The second would result in the land remaining the property of the vendor, subject, under law 6, title 5, book 3, to forfeiture, when the proceeding therefor has been enacted and applied.  Holliman v. Peebles, 1 Texas, 710.

13.  At common law an alien could acquire title by purchase—not by descent; but he could not hold by purchase against the State.  He could not acquire title by descent.  An inquest of office was necessary in the first instance, because he had acquired title; but not in the second, because he could not acquire anything to be forfeited.  By the law in force in Texas on May 25, 1836, a nonresident alien could neither acquire nor hold title to real estate.  Both prohibitions are found in the laws of 1828, 1835, and 1836, and it is too plain for honest, intelligent denial, that a nonresident alien could neither acquire nor hold land in Texas on May 25, 1836.  Law March 12, 1828; Law December 15, 1835; Schedule 1, Const. 1836; Const. 1836, Gen. Prov., sec. 10; Clay v. Clay, 26 Texas, 24; Lacoste v. Odam, 26 Texas, 458; 1 Cool. Blacks., 371.

14.  The laws of Mexico now in force do not recognize a forfeiture of lands to the State, but provide for forced sales of lands granted by the State and forfeited by abandonment, and payment of proceeds to the nonresident owner.  The finding by the courts that lands conveyed to an alien was forfeited to the State under the civil and Mexican law resulted from ignorance of the meaning of the term denouncement and its confusion with the inquest of office at common law.  Hall Mex. Laws, 224, 230, 237, 269; Ham. Mex. Laws, 232; Barrett v. Kelly, 31 Texas, 471; Moore v. Phillips, 100 U. S., 28; Touchard v. West, 5 Cal., 305; Halliday v. West, 6 Cal., 525.

*J. R. Bennett,* for appellees.—The question of alienage raised by plaintiff is fully settled against him. Barrett v. Kelly, 31 Texas, 481; Andrews v. Spear, 48 Texas, 568; Phillips v. Moore, 100 U. S., 208; Osterman v. Baldwin, 6 Wall., 116. It has become a rule of property, which this court will not disturb.

COLLARD, Associate Justice.—This is a second suit of trespass to try title, brought by the appellant against C. P. Bennett and J. R. Bennett, for six acres of land, alleged in the petition to be a part of the Samuel Johnson survey, in McLennan County.

The defendants pleaded not guilty.

There was a valid grant of eleven leagues of land, including the six acres sued for, made to Miguel Rabago, September 24, January —, 1834.

Plaintiff claimed the land by valid conveyances from the only heirs of Rabago, who died in 1848.

Rabago, on May 25, 1836, by attorney in fact, conveyed the eleven leagues to Guillermo Laguerenne, who was then residing in the City of Mexico, an alien to Texas.

Defendants set up this conveyance as an outstanding title; and it is admitted that if by it Laguerenne acquired title, plaintiff has no title and can not recover.

Defendants also set up title under patent to Samuel Johnson, a junior title to the Rabago.

The court below gave judgment for the defendants, on the ground that the deed to Laguerenne conveyed the Rabago grant to him, and that therefore plaintiff could not recover. Plaintiff appealed, and filed transcript in Supreme Court March 31, 1890.

The parties have made an agreed case, under rule 59, clause 2, of the Supreme Court, as follows:

"In compliance with clause 2 of rule 59, Supreme Court, it is agreed that there is no controversy as to the facts in this cause.

"The issues presented are of law, and are clearly stated in the assignment of errors, and are briefly herein set out.

"1. D. H. Williams, vendor of appellant, brought this action of trespass to try title to the land in controversy on September 11, 1873, which action was finally decided against him December term, 1888.

"Thereafter the said D. H. Williams conveyed the land in controversy to Eugene Williams, appellant, on March 26, 1889, who on April 1, 1889, brought this second action of trespass to try title. The defendants plead not guilty and the statutes of limitations, but do not plead res adjudicata.

"The court below concluded as matter of law, that whilst the first action of D. H. Williams suspended the statute of limitation, the judgment in that action against D. H. Williams is res adjudicata as to his vendee, Eugene Williams, appellant, on the ground that a plaintiff is entitled to

a second action of trespass to try title under the law prior to the Revised Statutes of 1879, if his action was brought prior to 1879, but his vendee, the appellant herein, is not entitled to a second action, but is barred by the first adjudication.

" The appellant assigns as error this conclusion of the court as applied to the record in this case; because, first, the defendants do not plead res adjudicata; and second, this conclusion is not the law, since appellant is also entitled to a second action, being the vendee of the plaintiff in the first action.

" 2. It is admitted that appellant's title is good from Miguel Rabago, the original grantee, through his only heir, Rosa Musquiz Rabago, who, joined by her husband, Antonio Cortez, conveyed the land to appellant's vendor, unless the deed from Rabago, by Blanco, to Guillermo Laguerenne, of date City of Mexico, May 25, 1836, is valid.

" If this deed passed the title to Laguerenne, subject to be defeated by any action of the government, the appellant's title can not be sustained.

"As stated above, unless this deed is an absolute nullity, appellant has no title.

"Appellant claims it is void. If void, the judgment should be reversed and rendered for appellant.

" Laguerenne was a resident citizen of the City of Mexico and a nonresident alien to Texas on May 25, 1836, when this deed was executed and delivered to him in the City of Mexico.

" Being a nonresident alien, appellant claims he could neither acquire nor hold title to land, and the sale to him was a nullity and the deed void.

" The court below concluded that the civil law rule of law was, that a sale to a nonresident alien was a nullity, but this rule did not ' apply to the condition of the young Republic,' and that this deed was valid and passed the title. Appellant assigns as error, the conclusions: first, that a deed to a nonresident alien passed title and was valid on May 25, 1836, whereas such sale was a nullity; second, that the civil law was not applicable to the ' condition of the new Republic' on May 25, 1836; third, that the court confined his conclusion of law to the civil law, finding the civil law rule that such sale was a nullity, but that it did not apply to the new Republic, whereas there were special enactments of Mexico and Texas (declaring this to be the law of the young Republic), of which the court below took no notice in his conclusions, yet which, together with the civil law, was the law governing this question on May 25, 1836.

" The appellee contends that the sale to Laguerenne was not a nullity, but that, as at common law, a defeasible title passed to him, subject to forfeiture to the State upon inquest of office or like proceeding, which never having been done, leaves the title in Laguerenne's vendee as an outstanding title.

"It is agreed the foregoing is a clear and succinct statement of the points of law involved in this record."

The foregoing agreement and statement of the case is duly signed by the attorneys for the parties.

The first assignment of error by appellant, that the court erred in holding that the vendee of one entitled to bring a second suit in trespass to try title under the law could not maintain the action, in our opinion, ought to be sustained. The right of D. H. Williams to bring his second suit was an assignable right, and passed to his vendee.

The remaining questions in the case are presented by assignment, as follows:

The appellant assigns as error:

"2. The finding and judgment of the court that Rabago's deed to Laguerenne passed title to the latter, whereas Laguerenne was a nonresident alien to Texas, and could neither acquire nor hold land in Texas, and the sale and deed to him were nullities.

"3. The finding of the court that the well known doctrine of the civil law (admitted by the court to be that a nonresident alien could neither take nor hold title to land) was not applicable to the condition of the young Republic on May 25, 1836.

"4. The failure of the court to pass upon this question of the sale to Laguerenne, as being also governed by the laws of Mexico and Texas, declaring the doctrine of the civil law that such sale was a nullity, and in confining the conclusion of law and basing the judgment of the court alone upon the conclusion that the doctrine of the civil law was not applicable to the conditions of the young Republic."

By the Constitution of the Republic of Texas, adopted March 17, 1836 (prior to the Laguerenne deed), article 6, schedule, section 1, laws then in force, were continued, as follows:

"That no inconvenience may arise from the adoption of this Constitution, it is declared by this convention, that all laws now in force in Texas, and not inconsistent with this Constitution, shall remain in full force until declared void, repealed, altered, or expire by their own limitation." Pasch. Dig., 35.

It was also provided in the same Constitution: "No alien shall hold land in Texas except by titles emanating directly from the government of this Republic."

But alien heirs could inherit estate, and were allowed a reasonable time in which to take possession and dispose of the same.

What the laws were at the time of the adoption of this Constitution, and while the foregoing provisions were in force, and especially the meaning of the first provision quoted, has been the subject of much learned discussion in the courts, and of conflicting decisions.

The opinion of Chief Justice Hemphill, as expressed in Holliman v. Peebles, 1 Texas, 674, evidently was, that an alien could not acquire land in the Republic of Mexico after the decree of the 12th of March, 1828. He says: "But whatever may be the true construction of the laws of Spain or of colonization on the subject matter, there can be no doubt that the capacity of aliens to hold lands in the Republic of Mexico, if it ever existed under the laws of Spain, was extinguished by the decree of the 12th of March, 1828. Ordines y Decretos, vol. 4, p. 155. The sixth article of this decree is expressed in the following terms, viz.: 'Foreigners introduced and established in conformity with the regulations prescribed, or which shall hereafter be prescribed, are under the protection of the laws, and enjoy the civil rights conferred by these upon Mexicans, with the exception of acquiring landed rural property, which by existing laws those not naturalized can not obtain.' The acquisition of real property is not only prohibited, but it is also declared that by the laws then in force it could not be acquired without naturalization. * * * The provisions of this decree are peculiarly stern against the acquisition of lands by foreigners, and subjects, in its eleventh article, all such lands acquired in fraud of the law to denunciation by any Mexican, to whom they shall be adjudged on proof of fraud." Holliman v. Peebles, 1 Texas, 719.

The question before the court in the above case was one of alienage of the plaintiffs, upon a plea of alienage set up by defendants, to which the civil law was applied, and the conclusion reached that the plea of alienage was properly sustained. But it should be noted that that suit was brought in December, 1840, after the common law was adopted in the Republic of Texas.

In Barrett v. Kelly, 31 Texas, 481, it is, in effect, decided, that aliens could acquire land in Texas, subject to be divested according to the laws of Mexico.

In Clay v. Clay, 26 Texas, 31, 32, the question was, could a nonresident alien acquire by purchase land in Coahuila and Texas, or in Mexico, by deed executed in 1830, recognized and approved by the vendor up to the time of his death, in 1835 ? The conclusion of the court was that he could not.

The reasoning of Chief Justice Hemphill, in Holliman v. Peebles, was approved, and the court said: "We can not err in holding that under the laws of Mexico an alien was incapable of holding real estate." The court quotes from Escriche a law of the Republic of Mexico, of December, 1835, providing that "the foreigner or alien can not acquire real property in the Republic, unless, having been naturalized, he shall marry a Mexican, and observe moreover that which the law prescribes relative to these acquisitions." Escriche, word Extranjero, 668. And also cites

the sixth article of the decree of March 12, 1828, and construes both laws as prohibiting aliens from acquiring real estate in Texas at the date of the deed mentioned.

This holding was approved in Lacoste v. Odam, 26 Texas, 458.

In Osterman v. Baldwin, 6 Wallace, 116, the Supreme Court of the United States held, that a deed to a citizen in New York to land in Texas, in 1839, conveyed a good title, subject to be defeated only by office found. But if this were not so, it is said, while Texas was a separate Republic, after it was admitted into the Union, the status of the vendee was changed as by naturalization, which had a retroactive effect so as to confirm the title.

The Supreme Court of this State, in Andrews v. Spear, 48 Texas, 567, in construing General Provisions, section 10, of the Constitution of the Republic of Texas, prescribing that "no alien shall hold land in Texas except by titles emanating directly from the government of the Republic," adhered to the holding in Osterman v. Baldwin, that a deed to an alien was only voidable, and would protect him until some proceeding on the part of the Republic against him. The deed was executed in 1841.

The same doctrine was held by our present Supreme Court in the case of Baker v. Westcott, 73 Texas, 134, where the deed was also executed to the alien in 1841. The court say, that the provision of the Constitution of 1836, General Provisions, section 10, was construed in both the cases above cited, Osterman v. Baldwin and Andrews v. Spear, in which "it was held, in effect, that a conveyance to an alien during the days of the Republic was subject to be escheated by a proceeding in the nature of office found, at the instance of the government, but that as between the parties to it and their privies it was good."

The court then concludes, "that under the conveyance, Westcott, the alien, took a title subject to be escheated at the will of the Republic, and that upon annexation his title became indefeasible."

The deeds in both of the foregoing Texas cases were made in 1841, after the common law was adopted, which was, on this subject, that an alien could take and hold land by purchase, subject to office found, but could not inherit it or take by implication of law that which the law would escheat on proceeding for that purpose.

The Constitution was paramount, however, and could not be controlled by the common law in case of conflict, and we do not suppose it was allowed to do so in these cases.

It is contended, that the laws of Mexico prohibited an alien from acquiring or holding land, and that by article 6, schedule, section 1, of the Constitution, these laws were adopted as then understood and administered, until repealed.

This was the effect of the provision, in so far as such laws were not inconsistent with that Constitution nor with public policy. It was not the

intention to destroy titles that had matured.   McMullen v. Hodge, 5 Texas, 35.

But the question still is, What was the law of Mexico, and of Coahuila and Texas? And how was that law affected by the alien clause in the Constitution?

The latest decisions of the Supreme Court of this State, above cited, have given us a construction, and declared that an alien, in so far as such law applied to the condition of things in the Republic, could hold real estate and could have good title until it was divested by the government. Our court is not alone in this construction of the civil law, or of that law as engrafted upon the laws of the Republic of Texas, to 1840.

In the case of Hammekin v. Clayton, 2 Woods, 337, a deed of the 11th of April, 1836, to an alien, was under consideration, and the court, after reviewing the authorities, and especially the tenth general provision of the Constitution of 1836, decided that the deed was not void, and that the better view of the decision of the courts was, that under the Mexican law a deed to an alien vested title, subject to be divested by proceedings by the government for that purpose.   The conflict in Holliman v. Peebles, Clay v. Clay, Lacoste v. Odam, with Barrett v. Kelly and Settegast v. Schrimpf (35 Texas, 341), was discussed.

In Phillips v. Moore, 100 United States, 208, the question was whether an alien could take title under a deed to land in Texas, executed in May, 1828.   It was held that he could—a defeasible title—subject to the right of the government to have it vacated by some proceeding ascertaining the fact.   Here the Texas cases up to Barrett v. Kelly were reviewed, the court holding with that case, and with De Merle v. Mathews, a California case.   26 Cal., 456.

The court say that "this conclusion is strengthened by the act of the Mexican Congress of the 12th of March, 1828, in relation to passports and the mode of acquiring property by foreigners."

The court refers to the sixth article of the decree, upon which so much stress is laid by Chief Justice Hemphill in the Holliman case, and continues as follows: "But yet, the eleventh article of the same act declares that property acquired by unnaturalized foreigners in fraud of the law may be denounced by any Mexican, to whom it will be adjudged as soon as such fraud is proved.   It would thus seem that, notwithstanding the prohibitory language of the sixth article, title may pass to a foreigner not naturalized, though it be one which is defeasible upon the denunciation of a private citizen."

The fact that proof of fraud in the manner of acquiring was required to enable a private citizen to denounce, is an indication that land sold to an alien did not ipso facto escheat, or return to the public domain.

This is the view taken of the Act of 1828 by the Supreme Court of California, in the case of De Merle v. Mathews, 26 California, 477.   "A

denouncement," says the court, "was a judicial proceeding, and though real property might be acquired by an alien in fraud of the law—that is, without observing its requirements—he nevertheless retained his right and title to it, liable to be deprived of it by proper proceedings of denouncement, which, in its substantive characteristics, was equivalent to inquest of office found at common law." Citing Escriche, word "Denuncia," and several adjudicated cases. See also Racouillat v. Sansevain, 32 Cal., 386.

We need not prolong the discussion of the question. We think the law is settled, and that it should be now held, as was done in the court below, that the deed to Laguerenne by Rabago conveyed to him and vested in him title to the land, that could be defeated only by some proceeding in the nature of office found, which has never been done; and therefore, according to the submission of the case as agreed, the judgment of the lower court should be affirmed.

Such is the law, as enunciated by the Supreme Court of the United States, and latterly by the Supreme Court of this State, sustained by the Supreme Court of California, and not controverted by any courts of last resort, except some early cases in this State, which have been overruled or disregarded by the present Supreme Court.

The question now decided was not directly decided by the Supreme Court of the United States when the case was before that court on error from the judgment in the first suit. It seems the point was misapprehended, and the court declined to reopen the case for further consideration of the question on motion for rehearing, the court being "satisfied with the conclusion it had reached." The question was in the case, however, as intimated in the ruling denying a second motion for rehearing, and as appears from the briefs filed in this court on the motion to dismiss the appeal. Williams v. Conger, 125 U. S., 425, and same case on renewal of application for rehearing, 131 U. S., 391.

The judgment of the court below is affirmed.

*Affirmed.*

Delivered November 30, 1892.