[No. 7366. Department Two. July 6, 1909.]

## J. W. ROMAINE *et al.*, *Respondents*, v. EXCELSIOR CARBIDE & GAS MACHINE COMPANY, *Appellant*.[1]

VENDOR AND PURCHASER—RESCISSION BY VENDOR—FRAUD—NEGLIGENCE OF VENDOR—LACHES—EVIDENCE—SUFFICIENCY. In an action to rescind a sale and trade of lands for money and stock in a corporation, for fraud in representing the financial standing of the company and the value of its rights, the evidence shows that the plaintiff was guilty of negligence and laches, precluding any recovery, where it appears that he was a competent business man and prominent in the community, that he consummated the trade relying upon promises that had not been fulfilled for such length of time as to have put him on inquiry, and thereafter, and while a stockholder, induced sales of treasury stock, and took no steps to rescind the sale for more than a year after the financial condition of the company was made public; especially where the property was of a speculative value and other's rights had become involved; and the same would be true of a co-plaintiff, a son, acting upon his father's advice.

Appeal from a judgment of the superior court for Whatcom county, Kellogg, J., entered January 11, 1908, upon findings in favor of the plaintiffs, after a trial on the merits before the court and a jury, in an action for cancellation. Reversed.

*Waters & Radley*, for appellant.

*Fairchild & Bruce* and *Crites & Romaine*, for respondents.

[1]Reported in 103 Pac. 32.

DUNBAR, J.—This is an action in equity to set aside and rescind a sale and cancel a warranty deed made by the respondents to the appellant, conveying certain tide land property situated in the city of Bellingham, Washington. The consideration for the sale was $1,500 in money, and eighteen hundred shares of the capital stock of appellant corporation. Contemporaneously with the filing of the complaint, respondents tendered the stock certificate and money to the amount of $1,500 into court, and tendered the amount of taxes appellant had paid on the land. The complaint alleges as grounds for rescission that respondents were induced to sell their property to the appellant through fraud consisting of divers and sundry fraudulent representations. As compactly stated by the respondents in their brief, their contention is that they were induced to part with valuable property at a consideration very much below its worth, through representations of the officers of the appellant showing a condition of appellant's affairs contrary to the truth, without which inducement respondents would not have parted with their property. That is the substance of the complaint. To this complaint a demurrer was filed, to the effect that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled. The defendant answered, denying the pertinent allegations of the complaint. A jury was called to pass upon certain questions of fact, and returned answers thereto as advisory to the court. The jury found all pertinent facts in favor of the plaintiffs. The court also made findings of fact and decreed a rescission of the sale. From this judgment, this appeal is taken.

A brief recital of the case is to the effect that, some time prior to 1904, appellant had been manufacturing acetylene gas machines, in Spokane, Washington. It acquired a patent on a furnace for manufacturing carbide, and O. W. Ames, president of appellant company, came to Bellingham, in September, 1904, to investigate possibilities for a furnace there. The company at that time held a note against one

James Muldowney, as part payment for stock, for $19,900. Ames then went to Pittsburg to order a carbide furnace, but finding that he did not have sufficient means to pay for the same, it was not ordered. In May, 1905, he came back to Bellingham and, about the 1st of June, was introduced by A. A. Rogers to J. W. Romaine, and after a series of consultations Romaine and Rogers made the trade with the company which was set forth in the complaint. The Rogers' portion of the land afterwards passed to the respondent Roy C. Rogers, who signed the deed to the same. The record in this case is exceedingly voluminous, but we have examined it in detail and are forced to the conclusion that the evidence does not sustain the judgment. Hence, it is not necessary to discuss the error alleged in overruling the demurrer to the complaint, as a decision on the merits must be preferable to all parties concerned. Many authorities are cited to sustain the judgment, but in cases of this kind where circumstances are so varying, we have not found the authorities of assistance, as the facts in this case do not bring it within the rule announced in the authorities cited.

It appears from the record in this case, that the principal reason urged to support the right of rescission is that the carbide furnace, which it is alleged was promised by the appellant, was never furnished; that the machinery, which it is alleged the appellant represented to be on the way, never arrived; that it was finally discovered that the company did not have the means which it represented it did have to establish the carbide plant; that a large portion of the capital stock which it represented to be in cash was in reality in an unsecured note given by one Muldowney, which was not an available asset. On the question of the alleged representations, the testimony is conflicting, Mr. Ames, the manager of the company, swearing positively that the sale of the treasury stock was for the express and avowed purpose of obtaining means to procure the carbide furnace, and that no other representations were made by him.

But, conceding the truth of the respondents' testimony in regard to these matters, we think from the testimony of respondents themselves, (1) that they were guilty of negligence in not ascertaining the true condition of the appellant's finances, having ample opportunity so to do; and, (2) that they were guilty of laches in not acting promptly after they did so ascertain it. And here we may dispose of the contention of the respondents that they had three years in which to commence the action after the cause of action was known. That the question of laches in this kind of a case bears no relation to ordinary statutes of limitation, where conditions of others are not changed or the rights of others not imperiled by lapse of time, and that the principle of laches still adheres in the substance of equitable relief and is, therefore, to be determined by the court under the circumstances of each particular case, has been the settled rule of law in this state since the decision of the case of *Gay v. Havermale*, 27 Wash. 390, 67 Pac. 804.

The respondent Romaine was an attorney of standing and experience, learned in his profession, and evidently a bright, intelligent man. His standing and business capacity had been recognized by the community in which he lived, by his election to the office of mayor of the city of Bellingham. No fiduciary relation existed between him and Ames, the president and manager of the company, by whom he claims he was overreached; so that, in that respect at least, they stood on an equal footing. Ames was introduced to Romaine about the 1st of June, 1905, and immediately appealed to him to take stock in the concern. The evidence shows that, from this time on, Romaine and Ames were in close relations, having many consultations concerning the enterprise, Romaine evidently believing, not only that an investment would be a good thing for him, but that the establishment of the plant would be a good thing for the city. He should, therefore, have been doubly careful in examining into the merits of the enterprise.

After all these consultations and examinations, Romaine, in a limited way acting as attorney for the company, on August 7, 1905, drew up a subscription contract, and he and A. A. Rogers, the confidential agent of the company, subscribed for five thousand shares of the stock at $5 per share, and at that time agreed to sell the land in controversy to the appellant at the price stipulated. Romaine testified that it was his belief in the representations made by Ames that the furnace would be procured in five or six months from the time the representations were made, viz., the 1st day of June, 1905, that caused him to subscribe for the stock, and part with his tide lands. Yet the sale was not consummated until December 9, 1905, at which time there was evidently no appearance of the establishment of a furnace or of the arrival of the machinery which had been promised. The failure on the part of the appellant to carry out the representations made, and which Romaine says were the sole cause of his action, was sufficient to put upon him the duty of examination before finally acting in the premises. But again, after he had become a stockholder and had participated for many months in stockholders' meetings, he testified that he became suspicious of the good faith of the managers of the concern, and that his suspicions were aroused by the report of a committee appointed by the board of trade of the city of Bellingham to investigate the standing of the appellant incorporation. In that report it was developed that a certain amount of assets represented as cash was actually represented by the Muldowney note above mentioned. The report was made on December 13, four days after the sale of the land by respondents, and showed the exact financial condition of the appellant. No complaints, however, were made until February 1, 1906, when respondents complained that they had been deceived. Still they did nothing looking towards a rescission, until April 17, 1907, having in the meantime attended the stockholders' meetings, holding themselves out as supporters of the enterprise, Romaine testifying that

he always spoke a good word for the company, and there being testimony to the effect that he was instrumental in procuring subscriptions to the treasury stock.

To briefly recapitulate, it will be seen that, before the sale was consummated, the promises alleged to have been relied upon had not been fulfilled, and yet the transfer was made. But passing that, after the sale was made, more than a year and a quarter had elapsed after the financial condition of the corporation had been made public and brought to the attention of the respondents, before this action of rescission was brought. Taking this in connection with the fact that the property in controversy is of a speculative value, being tide lands, it must be seen that the respondents have been guilty of gross laches in not seeking relief sooner. Other people's rights 'have become involved, and respondents must not be allowed to speculate upon the success or failure of an enterprise before they determine whether they will cast their fortunes with it or cut loose from it.

All that we have said with reference to respondent Romaine applies, excepting as to his official capacity, equally to respondent Rogers. He unquestionably acted upon the advice of his father, who knew the history of the transaction from beginning to end. He was also working for the appellant company at the time he subscribed for the stock, and was guilty of the same laches in not sooner bringing his action for rescission. So far as concerns the representations made by Ames in relation to the value of the stock, and what it would probably be worth in the future, that was purely an expression of opinion, and must necessarily have been recognized as such.

Under all the testimony in the case, we are compelled to reverse the judgment with instructions to dismiss the action.

RUDKIN, C. J., PARKER, MOUNT, and CROW, JJ., concur.