[No. 12748.　Department Two.　January 15, 1916.]

FRANK M. JARVIS *et al.*, *Appellants*, v. THOMAS A. IRELAND *et al.*, *Respondents*.[1]

FRAUD—PROOF—PRESUMPTIONS. Fraud, as ground for the rescission of a contract, will not be presumed or conjectured.

EXCHANGE OF PROPERTY — FRAUD — EVIDENCE — SUFFICIENCY. A charge of fraud in the exchange of property, in misrepresenting the price paid for and the value of shares of the capital stock of a land company, rescission of which is sought, is fully met and becomes immaterial where it is shown that the defendant refused *bona fide* offers for the stock equal to the represented value.

LIMITATION OF ACTIONS—FRAUD—DISCOVERY—EXCHANGE OF PROPERTY—RESCISSION—LACHES. Where plaintiffs, seeking rescission of the sale to them of shares of the capital stock of a land company, on account of misrepresentations as to its value and the amount of offers received for it, did not commence action until more than three years after discovery of the fraud, the action is barred, both by the statute of limitations and equitable estoppel.

EXCHANGE OF PROPERTY—RESCISSION—FRAUD—LACHES — EVIDENCE —SUFFICIENCY. The rescission of an exchange of property for shares of the capital stock of a land company, for defendant's fraudulent representations as to the character and value of the company's land, located at a great distance and which could not be examined, is properly denied, where the preponderance of the evidence is to the effect that the plaintiff knew defendant had no personal knowledge of the land, that his statements were made honestly and not positively, but upon reports received from others, to whom the plaintiff was referred, and that plaintiff did not rely thereon but interviewed the other parties, officers, and stockholders, between whom and defendant there was no collusion, and acted upon information received from others rather than defendant's representations; especially where, as a director in the company, plaintiff took no steps to complete purchase of the company's lands or to rescind the contract for a long time, meanwhile refusing an offer for the company's options that would have netted him a profit, until such time as the secretary of the company absconded and embezzled the funds of the company, making the stock worth less than it would otherwise have been.

Appeal from a judgment of the superior court for Whitman county, Mills, J., entered November 16, 1914, in favor

[1]Reported in 154 Pac. 455.

of the defendants, dismissing an action for rescission, tried
to the court.   Affirmed.

*S. P. Domer* and *Skuse & Morrill*, for appellants.

*Neill & Burgunder*, for respondents.

Holcomb, J.—Appellants sued to rescind a contract and
sale entered into between the husband and respondent
Thomas A. Ireland, on October 25, 1910.

Under the contract, appellants conveyed a certain lot and
a brick block thereon in Chewelah, Washington, and respond-
ents, in payment therefor, transferred to appellants 5,000
shares of common stock of the Skeena Valley Land Company,
paid $250 in cash, and assumed a mortgage of $1,100 on the
Chewelah real estate.   The grounds for rescission are alleged
false and fraudulent representations made by respondent
Thomas A. Ireland for the purpose of inducing appellants
to enter into the contract and sale, and which were so relied
upon.

The representations of fraud are these:

(1) Statements of fact made by respondent Thomas A.
Ireland to appellant Frank M. Jarvis concerning the price
paid by respondent for the common stock of the Skeena Val-
ley Land Company transferred to appellants, and of cash
offers made to respondent for the purchase thereof then pend-
ing.

(2)   That the Skeena Valley Land Company was then and
there the owner of approximately 10,000 acres of land in
the Skeena river valley, British Columbia, adjacent to the
town of Hazelton.

(3)   That such lands were first-class, level, agricultural
lands, susceptible of cultivation and adapted to the raising
of good crops of grain and fruit.

(4)   That the 5,000 shares of stock entitled the holder
thereof to select from the lands above mentioned and have
conveyed to the holder of such stock 517 acres of first-class,

level, agricultural land in the Skeena river valley, which were similar to adjoining lands then selling for $50 per acre.

It is further alleged that the lands were over 1,000 miles from where the contract was made and could not be examined by appellants, and they had no means of ascertaining the truth or falsity of the statements and representations made by respondent, but relied upon the statements so made.

The trial court found for the respondents chiefly upon the grounds of the laches of appellants, based upon the incontrovertible facts disclosed that appellants discovered, if it were true, as early as November 23, 1910, that respondent's representation as to cash offers for his stock was false, and that, therefore, the statute of limitations operated as a legal bar to that ground of rescission; that appellants knew, as early as the early part of 1912, that the land company did not own the land represented, but did not then take any steps to rescind; that, at that time, the land company had a large sum of money that could have been used in completing the acquisition from the British Columbia government of the lands for which the company had purchased options; that afterwards the secretary and treasurer of the land company, one Callahan, embezzled the funds of the company and absconded, after which occurrence appellants took steps to rescind. Whether or not the grounds of the court's decision were correct or sufficient, we must now try the cause *de novo* upon the facts and the law. It is a well established principle, here and elsewhere, that fraud must not be presumed nor conjectured. *Nath v. Oregon R. & Nav. Co.*, 72 Wash. 664, 131 Pac. 251; *Pierce v. Seattle Elec. Co.*, 78 Wash. 167, 138 Pac. 666.

I. As to the first charge of misrepresentation, on November 23, 1910, Jarvis wrote a letter to Ireland stating, among other things, that one Mahoney, one of the men respondent had referred to as having been willing to buy his stock for about $7,300, had denied it to Jarvis, and that Ireland had

placed a value of $7,000 on the stock, and that he did not feel right about it. At the trial, Mahoney denied that he had made any such statement to Jarvis, and further stated that, in October, 1910, he would have paid Ireland $1.50 per share for his stock, and that he then owned 20,333 shares of the stock. Another witness, one Cornelius, testified in behalf of respondent that he did in fact, about October 1, 1910, offer $1.50 per share to respondent for his stock, but that respondent wanted two dollars per share. Whatever price Ireland may have represented that he paid for his stock became immaterial when it was shown that he could in good faith have sold it for the sum he represented he could have sold it for.

This testimony fully disproves the first charge of misrepresentation; but if it did not, its discovery in November, 1910, and nonaction by appellant until February, 1914, when this action was commenced, fully bars any action upon that discovery of fraud, by the legal limitations as well as by equitable laches. It is conceded that the rule is that fraud may consist of the vendor representing as true that which he did not know to be true and which was not in fact true; but if the vendor represented to the vendee that he had no personal knowledge of the facts, but asserted them upon information received from other parties, he would not be liable for any false representations. *English v. Grinstead*, 12 Wash. 670, 42 Pac. 121; *Davidson v. Jordan*, 47 Cal. 351.

II. The most important particularization of fraud is that concerning the location, quality, and value of the Skeena river valley lands, for they were very remote from the location of the parties and it would be assumed that the vendee had no opportunity then to investigate them, and might rely upon the express representations of the vendor. This false inducement, if made, was the most material, and includes the second and part, at least, of the third and fourth charges of misrepresentation and fraud. We, therefore, examine the

record carefully for the purpose of ascertaining what those representations, if any, were.

The case presented is somewhat similar to that of *Romaine v. Excelsior Carbide & Gas Machine Co.*, 54 Wash. 41, 103 Pac. 32. We are not disposed to say that the elements of laches exist as completely in this case as in that. Possibly the rights of no "other people" became involved in this case, except the rights of other and subsequent purchasers of stock in the company, which appellant aided in controlling after he became a shareholder. Approximately the same time elapsed after Jarvis discovered, or should have discovered, the alleged worthlessness of the company, as in the *Romaine* case.

Every case for rescission of a contract for actionable fraud depends largely upon the particular facts of the case. In this case, we cannot escape the conclusion that the facts, and the logical inferences deducible therefrom, greatly preponderate in favor of respondents.

As to the representations themselves, the evidence for respondents outweighs that for appellants. After reading the entire evidence carefully, it convinces us that Ireland's representations were not positively made, nor with intentional deceit. We find nothing tending to show that he knew them to be false, or that he did not honestly believe them to be true, or that he had reason to doubt or disbelieve the sources of his information. Ireland was not a promoter of the enterprise. On Jarvis' own showing, it is plain that Ireland had never been, or professed to have been, on the land, and therefore had no personal knowledge of it save its very general location, but made his statements upon reports received from others, of which Jarvis well knew. By his own showing, also, Jarvis telephoned to Callahan, the secretary, general manager and chief promoter of the company, to come out from Spokane, where he had his place of business, to Hillyard, a suburb, where Jarvis lived, and talked the company's assets and prospects over very fully, and said he believed the state-

ments made by Callahan. He also went to see and consulted with a Mr. Crane, to whom Ireland referred him, twice, and with Mr. Beck, Mr. Finley and Mr. Ratcliffe, other stockholders, before he closed the transaction with Ireland. All this fully corroborates Ireland's testimony and that of his witness Chapman, that Ireland told Jarvis that he had not seen the land of the company and knew nothing about it (except the general character and climate of the country) other than what Callahan had told him and Crane reported in writing to the stockholders, and to go see them and the other stockholders mentioned. Hence, it is obvious that Jarvis, so far from believing and relying upon the representations of Ireland as to the value of the stock and assets of the company, did not do so, but interviewed other parties, between whom and Ireland not the slightest collusion is shown, to ascertain what value they placed upon the stock of the company and its holdings; and, so far as he made his purchase upon a belief in the existence of certain facts, he acted upon the information he got from others rather than any he got from Ireland, before he would enter into the transaction. Under such circumstances, the vendor is not liable for actionable fraud and deceit. *Humphrey v. Merriam*, 32 Minn. 197, 20 N. W. 138; *Moore v. Scott*, 47 Neb. 346, 66 N. W. 441.

In addition to the above circumstances, it is clear, as stated by the trial judge, that Jarvis knew, in the latter part of 1911, or early part of 1912, by reason of his being a director of the company, that the company had only options to purchase the land which it was supposed to own; he also knew that payments of cash of considerable amount, and notes to a larger amount, had been taken by this corporation for subscriptions to its capital stock, and that it was the intention of the company that the funds thus raised, and to be raised, were to be used in completing the purchase of the lands, yet he took absolutely no steps, as director, to see that these

funds were so applied; and took no steps to rescind the contract with respondent at that time nor for a long time thereafter.  Long prior to the commencement of this action, he attended a stockholders' meeting at which the question was considered whether an offer for the options of the company should be accepted at a price which would have netted him at that time considerably more than he had considered the stock worth when he made the trade, and at that time he voted to refuse to make such sale, evidently relying upon the assets that were from time to time in the hands of the corporation being applied by the officers towards the acquisition of the title to the lands, until such time as the secretary and general manager had absconded and embezzled the funds of the company, and thus made his stock worth considerably less than it would otherwise have been, when he brought this action.

The foregoing reasoning and deductions of the trial judge are correct.

Appellants should not recover.

Judgment affirmed.

MORRIS, C. J., BAUSMAN, MAIN, and PARKER, JJ., concur.