[No. 2390.    Decided December 11, 1896.]

OREGON MORTGAGE COMPANY (LIMITED), *Appellant*, v. HENRY CARSTENS, *Respondent*.

ALIEN OWNERSHIP OF LANDS — HOW SET ASIDE — EFFECT OF PRIOR CONVEYANCE BY ALIEN.

The constitutional provision declaring void "all conveyances of lands hereafter made to any alien, directly or in trust for such alien," does not apply to cases in which a citizen deeds to an alien mortgaged lands in satisfaction of a *bona fide* mortgage debt, since another section of the same constitutional provision excepts from the prohibition upon alien ownership lands acquired "under mortgage or in good faith in the ordinary course of justice in the collection of debts." (DUNBAR, J., dissents.)

Where an alien has power to hold real estate at all, a deed to him in violation of the law will pass a title good against all the world except the state, and one which can only be attacked by a direct proceeding upon the part of the state.

An alien holding lands in this state under a defeasible title, which is subject to attack on the part of the state as in contravention of the constitution, may by deed transfer a good title thereto to any person entitled to hold it, if no proceeding has been taken by the state for the purpose of setting aside the deed to the alien.

Appeal from Superior Court, King County.—Hon. RICHARD OSBORN, Judge.    Reversed.

*Hastings & Stedman*, and *Crowley & Grosscup*, for appellant.

*Josiah Collins*, for respondent.

The opinion of the court was delivered by

Scott, J.—This case presents the question of the power and right of an alien corporation to acquire and hold real estate within the State of Washington. The plaintiff loaned a sum of money to one McIntosh and took a mortgage to secure the payment thereof on certain lands, and McIntosh being unable to pay the same, said parties entered into an agreement whereby he executed a deed of the lands to one Livingstone as trustee for the plaintiff, and Livingstone subsequently deeded to the plaintiff. Thereafter the plaintiff and the defendant Carstens entered into an agreement whereby the plaintiff agreed to convey by good and sufficient deed to the defendant the lands in question, and the defendant agreed to pay the plaintiff therefor a sum of money specified. It was further provided that in case the defendant should fail to accept said deed and pay for the lands; the plaintiff should have the option to proceed to enforce the agreement and recover the purchase price of the land from the defendant. A tender of the deed in pursuance of said agreement was pleaded, and the refusal of the defendant to accept and pay for the same, and that the plaintiff exercised its option and elected to bring suit against the defendant for the purchase price. The answer admitted the making of the agreement and the promise to pay on the part of the defendant, and a tender of a deed sufficient in form as alleged; and for a further defense the defendant set up the fact that the plaintiff was a foreign corporation, the execution of the mortgage from McIntosh to the plaintiff and the making of the deed by McIntosh to the plaintiff as aforesaid, in satisfaction of the mortgage; but alleged that the plaintiff acquired no title by virtue of such

deed, and for that reason that the defendant refused
to accept it or pay the purchase price.    Plaintiff filed
a demurrer to the affirmative defense, which was over-
ruled, and, declining to plead further, the court ren-
dered a judgment upon the pleadings in favor of the
defendant, whereupon this appeal was taken.

The constitutional prohibition against the acquisi-
tion of real estate by alien corporations is to be found
in art. 2, § 33 of the constitution, and is as follows:

"The ownership of lands by aliens, other than those
who in good faith have declared their intention to be-
come citizens of the United States, is prohibited in
this state, except where acquired by inheritance, under
mortgage or in good faith in the ordinary course of
justice in the collection of debts; and all conveyances
of lands hereafter made to any alien directly, or in
trust for such alien, shall be void: *Provided,* That
the provisions of this section shall not apply to lands
containing valuable deposits of minerals, metals, iron,
coal or fire-clay, and the necessary land for mills and
machinery to be used in the development thereof and
the manufacture of the products therefrom.    Every
corporation, the majority of the capital stock of which
is owned by aliens, shall be considered an alien for
the purposes of this prohibition."

On March 28, 1890, the legislature enacted a law
for the purpose of enforcing this provision, substan-
tially following its language.    Gen. Stat., § 1524.

The plaintiff contends that this land was acquired
within the exception contained in the constitutional
provision; that is, that the title was acquired under
mortgage or in good faith in the ordinary course of
justice in the collection of a debt.    It is conceded
that McIntosh was the owner of the lands in fee
simple, and that the deeds were all sufficient in form
to convey the title.    It is plain that the purpose of
the prohibition is to prevent the acquisition of lands

in large quantities by alien and non-resident owners. It is apparent by the exception referred to that it was not intended that the provision should be construed so as to prevent the loaning of money by aliens upon real estate security within this state; but it was contemplated that such loans should be permitted and protected, of course with the limitation that such transactions must be *bona fide.* In this case there is no claim of any bad faith, but the question is whether, in the case of an actual loan made, an alien can take a direct deed from the mortgagor of the land in satisfaction of the mortgage debt, or whether he must proceed to acquire title by a foreclosure in the courts.

It will readily be seen, that an agreement such as was here entered into between McIntosh and the plaintiff would usually tend to the advantage of both parties. The costs of the foreclosure suit would be avoided, and as well the liability to a deficiency judgment upon the part of the mortgagor. It would seem that there could be but two objections urged against it as tending to defeat the purpose of the provision. One is that, in case of a foreclosure in the courts, the mortgagor would have a right to redeem the premises. But this is a personal right which he might or might not exercise, at his option. We presume it will be conceded that he could waive the right to redeem after a judgment of foreclosure, and we see no reason why he should not be permitted to waive this right at any time, if he should deem it to his advantage in order to avoid costs and a liability for a deficiency. The other objection is that, in case of a foreclosure and public sale thereunder, other parties would be entitled to bid for the lands and the result might be, in consequence of this, that the alien plaintiff would not become the purchaser.

The respondent contends that, if a proceeding like this can be sustained, it would be an easy matter for an alien desiring to obtain a tract of land in this state to go through the form of making a loan thereon and immediately thereafter take a deed in satisfaction of the mortgage and thus avoid the prohibition. But we are unable to see why, in case of a fraudulent arrangement between the mortgagor and the mortgagee, such a proceeding could not as well be carried out through the form of a foreclosure. The loan could be made in so large an amount and so great a price bid for the lands upon the foreclosure sale thereunder as to prevent other parties from becoming purchasers, and it would seem that the provision could be as readily violated in the one case as in the other.

Alien corporations are not prevented from acquiring and holding lands in this state in all cases, and the objections urged against this transaction are substantially only to the form of acquiring title to lands upon which mortgage security has been taken. It is evident that the clause, "and all conveyances of land hereafter made to any alien directly or in trust for such alien shall be void," is limited by the other provisions contained in the section, and that it was not intended to prevent an alien from holding land under any circumstances. It simply goes to the means or purpose of the alien in acquiring title. In other words, in cases like this, the original purpose must not have been to acquire title to the lands under the transaction or guise of a mortgage loan, but must have been in good faith to make the loan as a loan, and the mortgage taken as an incident merely to secure its payment, and the land acquired in good faith thereunder. It is apparent that the form of the con-

veyance is of little or no consequence, unless it should tend to defeat the purpose of the provision.

In Devlin on Deeds, § 131, it is said:

" It is not the object of the state to add to its revenue by the confiscation of property, but to protect itself from the danger of allowing persons who owe it no allegiance to own land within its boundaries, and perhaps use the profits derived from the land in acts of hostility to the state. For this reason is it that the land may be forfeited to the state."

It is further contended by the plaintiff that its title so taken would be only a defeasible one, at least, and that it could only be attacked by a direct proceeding on the part of the state, and that a deed of the land by the plaintiff to a party entitled to hold it, before the state should undertake to have the conveyance to it set aside, would transfer a good title; and we are of the opinion that this position is well taken, for the objection would then be obviated; and conceding this to be true, the deed tendered by the plaintiff to the defendant would have passed to the defendant an indefeasible title.

There are a number of authorities to which our attention has been called, upon provisions very similar to the one here in question, and the tendency of the decisions elsewhere, although under somewhat different provisions, but all for a like purpose, is to strongly sustain the plaintiff here.   6 Thompson, Corporations, § 7918; *Phillips v. Moore,* 100 U. S. 208; *Cross v. De Valle,* 1 Wall. 5; *Carlow v. Aultman,* 28 Neb. 672 ( 44 N. W. 873 ); *American Mortgage Co. v. Tennille,* 87 Ga. 28 (13 S. E. 158); *Williams v. Bennett,* 1 Tex. Civ. App. 498 (20 S. W. 856.)

In Murfree on Foreign Corporation, § 353, it is said that, if a foreign company has power to hold real

estate *at all*, a deed to it in violation of the local law will pass a title good against all the world except the state.   As an alien may acquire and hold lands in this state in the instances specified, and in case of mineral lands, etc., under the last part of the provision, may clearly obtain title thereto by direct purchase, the mere form of the conveyance can prove nothing; and the real question in each case must be whether the land was obtained in good faith or by fraud in violation of the provisions, and this should only be determined by a proceeding upon the part of the state.   Before such a determination, the presumption would be that the parties had kept within the law, rather than that they had violated it, and *prima facie* the deed would be good.

The clause in the provision, "in the ordinary course of justice in the collection of debts," should not be held to require a proceeding in court in the case of a mortgage debt.   The language used does not require it necessarily, and such a construction would go to the form rather than the substance of the transaction.   It would afford little or no protection against an attempted fraudulent acquisition.   While it is true that a foreclosure might result in a sale to a resident, it is a well known fact that the usual result is a sale to the mortgagee.   There is no attempt or desire upon the part of the mortgagee to retain these lands.   On the contrary it is attempting to dispose of them, and it is evident that the whole transaction has been conceived and carried out in the utmost good faith to collect its debt; and while a direct provision of the constitution as to the form of the conveyance, even, could not be disregarded, there is none in the way here, and it will be time enough to inquire into the validity of such transactions when fraud is charged

and the desired protection invoked by a proceeding upon the part of the state.

It is not an unusual proceeding for a mortgagor to convey lands directly to a mortgagee in satisfaction of a mortgage debt, and, where the parties agree upon such a course, it would seem as though it should be favored in a case like this rather than discriminated against. The only just and effectual enforcement of the constitutional inhibition can be by a proceeding upon the part of the state to have the transaction adjudged fraudulent and invalid, and actual fraud of course could always be inquired into. It would be idle to assume that the state has not ample power to protect itself in such matters, and it might be just as necessary and desirable to resort to such a proceeding where title was acquired through the form of a mortgage foreclosure as in case of a direct deed by the mortgagor to the mortgagee.

We are of the opinion that the judgment of the court overruling the demurrer was wrong, and it is reversed and the cause remanded for further proceedings in accordance with this opinion.

HOYT, C. J., and GORDON, J., concur.

ANDERS, J., concurs in the result.

DUNBAR, J. (*dissenting*).—I dissent. The language of the constitution is plain and unequivocal, and in my judgment is not susceptible of construction, and the rights of aliens ought not to be enlarged by the courts. Under the constitution, there is only one way for them to obtain title to land, so far as obtaining it under mortgage is concerned. This land was not acquired under mortgage. It was acquired by private contract of sale—simply that and nothing more. Neither was it acquired in the ordinary course

of justice in the collection of debts, or any course of justice at all. If sold under foreclosure some citizen might have bought in the land. The majority opinion seeks to overcome this objection by asserting that it is a well-known fact that the usual result is a sale to the mortgagee. I do not think we ought to concern ourselves about who the purchaser usually is. If the mortgage were foreclosed, the citizen would at least be placed upon an equal footing with the alien in obtaining title to the land, which the alien is resorting to to collect his debt "in the ordinary course of justice." The object of the constitution evidently was to prevent the acquisition of lands by aliens as a matter of public policy, and to prevent them from acquiring lands excepting when it was actually necessary for the collection of their debts. That necessity cannot be ascertained until the lands mortgaged are offered for sale in due course of law. In spite of all argument to the contrary, it is plain to my mind that the construction placed upon the constitution by the majority facilitates and encourages aliens in the evasion of the constitution and destroys the safeguards placed around such transactions by the fundamental law of the state. The judgment should be affirmed.