[No. 13955. Department One. November 13, 1917.]

GERMAN-AMERICAN MERCANTILE BANK, *Respondent,* v. ILLINOIS SURETY COMPANY, *Appellant,* GAS SERVICE CORPORATION OF AMERICA, *Defendant.*[1]

GUARANTY—CONSIDERATION. A judgment against a surety on a guaranty bond is sustained where the bond recites that it was to guarantee the payee of a note to the bank, its successors and assigns, and the faithful and prompt payment of all promissory notes executed by the maker during a stated period in an amount not to exceed $25,000.

FRAUD—EVIDENCE—SUFFICIENCY. Fraud cannot be inferred nor found upon a mere preponderance of the evidence, where it is asserted that the contract was procured by fraud and collusion.

PRINCIPAL AND AGENT — POWER OF ATTORNEY — CONSTRUCTION. Where a power of attorney is susceptible of two different constructions and the agent adopts and acts upon one of them, the principal cannot repudiate the act and escape liability for his negligence in the choice of words.

SAME. Where a surety company deliberately inserted words in a blank form of power of attorney prepared by and customarily used by it, it is to be construed, in case of doubt, strongly against the company.

SAME. A typewritten insertion in a general power of attorney by a foreign corporation, empowering the agent to execute "any and all bonds . . . required to be filed in the state of Washington," is not inconsistent with or a restriction upon broader powers contained in the letters, especially where the circumstances indicated an intent to limit only the territory, rather than the scope of authority conferred, and the company never called in question the agent's power to write bonds *not* required to be filed in the state of Washington, after knowledge of his assumption of such power.

[1]Reported in 168 Pac. 772.

SAME. A caution, at the top of a power of attorney, not to execute any bond "not specifically authorized in this power of attorney," merely directs attention to the conditions and does not aid in its construction.

SAME — AUTHORITY OF AGENT — EVIDENCE — SUFFICIENCY. A renewal of a bond may be assumed to be within the scope of the authority of an agent, where the first bond was not repudiated during its period of six months; especially where it was executed for money loaned and used to pay obligations arising on the first bond for which the surety was liable.

Appeal from a judgment of the superior court for King county, Smith, J., entered June 24, 1916, upon findings in favor of the plaintiff, in an action upon contract, tried to the court. Affirmed.

*Piles & Howe, Stephen V. Carey,* and *Earl M. Brockett,* for appellant.

*C. H. Winders* (*M. M. Richardson* and *Hugh C. Todd,* of counsel), for respondent.

WEBSTER, J.—The respondent, having loaned the defendant Gas Service Corporation of America the sum of $25,000 upon its promissory note, brought this suit against that concern and the appellant to recover the amount due. Judgment went against both defendants, and the surety company appeals.

The right to recover from the Gas Service Corporation was based upon the unpaid note, and against the appellant upon a certain bond which it is claimed was given to secure the amount due on the note. The bond was executed by "Illinois Surety Company, by Frank G. Opie, its attorney in fact," and, among other things, recites:

"The undersigned, being interested in the project for which the money to be loaned as aforesaid is to be used, does hereby guarantee to the said bank, its successors and assigns, the faithful and prompt payment of all promissory notes executed by Gas Service Corporation of America from this date, and during a period of six months from this date, in an amount

not to exceed twenty-five thousand dollars ($25,000) with interest."

The bond also contains recitations to the effect that the respondent refused to make any loans to the gas corporation except upon the execution and delivery of the bond, and that the appellant has received, and will receive, valuable consideration for its execution. Standing alone, the bond is unquestionably sufficiently comprehensive to support the judgment.

The appellant, however, asserts that it was procured by fraud and collusion, and also that its execution was beyond the scope of Mr. Opie's authority. Notwithstanding that this court will rarely balance sharply conflicting evidence where the lower court, upon oral testimony, has made findings upon a disputed question of fact, we have read both the abstract and the statement of facts with painstaking care. In doing so, we have not lost sight of the appellant's contention that a conspiracy to defraud may be proved by circumstances as well as by direct evidence. We are not at liberty, however, to infer fraud merely because it is suggested. Neither can it be found upon a bare preponderance of the evidence. In this case the circumstances tending to establish it are anything but convincing.

But were we to assume the existence of a fraudulent conspiracy between Mr. Opie and those interested in the Gas Corporation, there is absolutely nothing which satisfactorily connects the respondent therewith or which shows that it had knowledge of their design. At the time of the execution of the bond, the appellant was operating under an Illinois charter by which it was empowered to do business

"for the purpose of guaranteeing the fidelity of persons holding public or private places of trust, and the performance by persons, firms, and corporations of contracts, bonds, recognizances, and undertakings of every kind, and for becoming surety on bonds required by law, and on every kind of contract, obligation, and undertaking of persons, firms, and corporations."

The charter further recites that the principal place of business of the appellant should be at Chicago, "but it will establish and maintain branch offices in the state of Illinois and elsewhere as its business may require." In the pursuit of this power, the appellant established agencies throughout the United States and complied with the requirements of our statute by filing the necessary documents with the insurance commissioner as a prerequisite to the commencement of business in this state. Among these, was its approval of an application by Mr. Opie for a license to act as its general agent. The license was issued in 1912, and renewed from time to time. In November, 1912, it gave Mr. Opie its power of attorney wherein he was constituted

"its true and lawful attorney in fact, to execute, acknowledge, and deliver for and on behalf of said corporation, as surety, in its name, place, and stead, bonds, undertakings or writings obligatory in the nature thereof. *Any and all bonds or undertakings required to be filed in the state of Washington.* It being the intention of this power of attorney to fully authorize the said Frank G. Opie to sign the name of said corporation, as surety, to any and all such bonds, undertakings or writings obligatory in the nature thereof; and the said corporation hereby approves, ratifies, and confirms all that its said attorney in fact may do or lawfully cause to be done in the premises by virtue of these presents."

The italicized portion of this quotation was typewritten, the rest was printed. This power was preceded by two others similar in kind save that the first, dated January 31, 1911, required that bonds should be countersigned by J. H. Douglas, and the second, dated May 11, 1911, which required no counter signature, covered the state of Oregon as well as Washington. The respondent asserts, and the preponderating evidence shows, that it never saw the power of attorney of November, 1912, but determined Mr. Opie's authority in the premises from prior dealings with him and from an examination of the auditor's records in King county, which only disclosed those of January and May, 1911. These records

did not show the fact that the words "any and all bonds or undertakings required to be filed in the state of Washington" had been inserted by typewriter. In view of our conclusion, however, it will not be necessary to weigh the testimony as to whether respondent had knowledge that they were so written, but we shall consider the case as if the respondent knew that they were so inserted.

The appellant's contentions, as we understand them, are these: (1) That the typewritten portion shall govern the printed provisions of the power of attorney, which, when so read, demonstrates that Mr. Opie had no authority to execute any bonds except such as are "required to be filed in the state of Washington;" treating this language as though it read "required *by law* to be filed in the state of Washington." (2) That, even if the power conferred be construed to extend to other bonds and undertakings, the one in suit is so unusual and extraordinary as to be incapable of binding the appellant unless executed by its officers at its home office.

It may be conceded as a general proposition that, where there is an inconsistency between written and printed portions of an instrument, the written language must prevail. We may also assume that a power of attorney ought to be construed strictly so as to exclude the exercise of authority which is not warranted by the language of the instrument or implied as a necessary means of fully carrying out the purpose for which the letters were executed.

This rule applies, however, to unambiguous instruments. When the powers conferred are clear and explicit, they cannot be extended by construction. On the other hand, if the language employed is susceptible of two different meanings and the agent adopts and acts upon one of them, the principal will not be permitted to say that he intended the other. He cannot thus repudiate the act and escape liability resulting from his negligence in the choice of words. Especially is this true where the rights of third parties would thereby be impaired.

"Again, if a construction be in some doubt, not only may usage be resorted to for explanation (Story on Agency, p. 73; 5 T. R., 564), but the agent may do what seems from the instrument plausible and correct; and though it turn out in the end to be wrong, as understood by the principal, the latter is still bound by the conduct of the agent. *Lomax v. Cartwright*, 3 Wash. C. C. 151; 2 Id. 133; 4 Id. 551. 6 Cow. (N. Y.) 358, in *Andrews v. Kneeland*. Because the person who deals with the agent is required like him to look to the instrument to see the extent of the power (7 Barn. & C. 278; 1 Pet. 290); and if it be ambiguous, so as to mislead them, the injurious consequences should fall on the principal, for not employing clearer terms." *Leroy v. Beard*, 8 How. (49 U. S.) 451.

The effect of the foregoing language is that, in case of doubt, the words of an instrument shall be taken most strongly against the person using them.

"A written contract should, in case of doubt, be interpreted against the party who has drawn the contract. Sometimes the rule is stated to be that where doubt exists as to the construction of an instrument prepared by one party thereto, upon the faith of which the other has incurred an obligation, that construction will be adopted which will be favorable to the latter. If other things are equal, a construction most beneficial to the promisee will be adopted when the terms of an instrument and the relation of the parties leave it doubtful whether words are used in an enlarged or restricted sense. To state the same proposition conversely, it may be said that everything is to be taken most strongly against the party on whom the obligation of the contract rests." 6 R. C. L. 854.

See, also, Mechem, Agency (2d ed.), §§ 792, 793.

This rule is peculiarly applicable here, for the reason that the words used are the words of the surety company, deliberately inserted in a blank form prepared by it and customarily used in the creation of agencies not only in Washington but throughout the Union.

Again, inasmuch as appellant

". . . . is a corporate surety company executing the bond for a money consideration and engaged in such business

for profit, it is not entitled to invoke the rule ·of *strictissimi juris*, as might be done by a gratuitous surety. *People v. Traves*, 188 Mich. 345, 154 N. W. 130; *American Fidelity Co. v. State*, 128 Md. 50, 97 Atl. 12; *People v. Cochrane*, 264 Mo. 581, 175 S. W. 599; *Standard Salt & Cement Co. v. National Surety Co.* (Minn.), 158 N. W. 802 (and authorities there cited); *Southwestern Surety Ins. Co. v. Davis* (Okl.), 156 Pac. 213·; *State Agricultural & Mechanical Soc. v. Taylor*, 104 S. C. 167, 88 S. E. 372; *Young v. American Bonding Co.*, 228 Pa. 373, 77 Atl. 623. Its business is essentially an insurance against risk and is commonly called, and properly so 'fidelity insurance.' The obligation sued upon may more properly be termed a contract of insurance, rather than a bond, as it is called in the record and briefs; but as the latter term is used throughout the case, we will so style it. All defenses available to gratuitous sureties may not be available in case of corporate sureties for profit, but such defenses as would be available in actions on contracts of insurance are available here." *Ladies of Modern Maccabees. v. Illinois Surety Co.* (Mich.), 163 N. W. 7.

Keeping in mind the fact that it is the duty of courts when interpreting contracts to reconcile all provisions where possible and to give effect to every word and clause used, it is' difficult to see wherein the typewritten words are inconsistent with or restrictive of the broader powers contained in the letters. When we look to the subject-matter and surrounding circumstances as well as to the language used, the mind at once inclines to the conclusion that the typewritten clause was inserted as a limitation upon the territory over which the authority should extend, rather than upon the scope and, character of the authority conferred. In other words, it fixes the place where the authority conferred is to be exer-̇ cised, but does· not relate to the character and extent of the authority itself. This conclusion is fortified by the fact that the appellant is a foreign corporation, possessed under its charter of the broadest powers known to the law of suretyship. Its business is carried on in different sections of the country through local agencies. It entered this state, com-

plied with our laws and, through Mr. Opie as its licensed general agent, did business as a compensated surety. The power of attorney nowhere fixes the field over which Mr. Opie's authority shall extend, unless the typewritten words are so construed. They are certainly not so plain and explicit as to warrant the almost preposterous conclusion that the appellant deliberately intended to divest itself of the right to exercise in this state, through its general agent, the principal powers for which it was organized. To the contrary, the record shows that Mr. Opie wrote, and was supplied by appellant with blank forms for writing, bonds of almost every kind and description. It knew that he was assuming to write bonds not required by law to be filed in this state, and yet his authority to do so was never called in question.

"Even though authority be conferred by written instrument, its meaning may often be made more clear by showing what the parties have uniformly recognized as acts properly falling within it." Mechem, Agency (2d ed.), § 785.

To be sure, the record shows that appellant had no notice that Mr. Opie had executed the bond sued upon, but the respondent cannot be charged with the agent's dereliction in failing to report to his principal his acts and doings under his letters. Respondent was entitled to assume that Mr. Opie had done his duty by remitting the premium or reporting the bond, thereby apprising appellant of the transaction. In the absence of connivance—and none has been shown in this case —there was no reason why the respondent should suspect Mr. Opie of wrongdoing, or of exceeding his authority as the surety company claims to have understood it.

Stress is laid upon the fact that there appears at the top of the power of attorney these words: "Caution. Never execute any bond not specifically authorized in this power of attorney." There is nothing infinite in this. At most it merely directs attention to the conditions of the instrument and invokes the familiar rule that, when an agent's authority is in writing, those dealing with him must take notice of its

terms. In fact, it seems to be addressed to the agent rather than to third persons. But this is quite immaterial.

Our conclusion is that the power of attorney, when construed in the light of attendant circumstances, can only mean that the territorial extent of Mr. Opie's authority to write bonds was limited to the state of Washington, and that within its limits he was authorized to write such "bonds, undertakings, and writings obligatory" as the appellant could write under the terms and provisions of its charter hereinbefore quoted.

This disposes of the contention that the particular bond is so peculiar and extraordinary that its execution is not authorized by the letter of attorney. But in view of the earnestness with which the point is urged, we shall review it briefly. In the first place, the bond in suit, while on its face an original obligation, was, as a matter of fact, a renewal of another given some six months before to secure a similar indebtedness. There is nothing in the record which shows that the respondent knew, or had reason to believe, that the appellant was not cognizant of the fact that the first bond had been written. Nor was there anything to excite suspicion or to cause it to inquire whether Mr. Opie had neglected to communicate with his principal or to report his business in the ordinary and usual course. The first bond having been written and not repudiated though six months had elapsed, the assumption that it was authorized or sanctioned by the surety company is not extraordinary. Furthermore, the record discloses that the appellant was already bound upon certain construction bonds for the Gas Service Corporation at the time the first bond was executed, and was therefore interested in the loan to the end that the proceeds could be used in completing the construction contracts. In addition to this, Mr. Opie countersigned checks drawn against the funds. These facts all tend to allay rather than arouse suspicion. If the money loaned by respondent was used to pay obligations arising under the construction bond upon which appellant's liability is

not questioned, the effect of the transaction was merely to transfer its liability from one party to another. Under these circumstances, we fail to see wherein the bond is an extraordinary one. Many of the points urged by counsel for appellant were considered and foreclosed by this court in *Pacific Nat. Bank of Tacoma v. Aetna Indemnity Co.*, 33 Wash. 428, 74 Pac. 590, and we shall not enter upon a new discussion of them.

The conclusion reached makes it unnecessary to decide the points presented by counsel for respondent in his entertaining argument upon the state insurance code. We have carefully considered the many points urged in behalf of appellant, but as we have tried the case *de novo* they are found to be without merit.

The judgment is affirmed.

ELLIS, C. J., CHADWICK, MAIN, and MORRIS, JJ., concur.