[No. 18948. Department Two. March 16, 1925.]

## The State of Washington, *Appellant*, v. Chuski Kosai *et al., Respondents.*[1]

Aliens (3) — Disabilities — Title to Real Property — Trust Estates—Gifts—Fraud—Presumption—Evidence—Sufficiency. An alien, having the right to convey land prior to the enactment of the alien land act, Rem. Comp. Stat., § 10581, if done before any steps were taken to escheat the land, his deed of gift to his minor son, who is a citizen of the United States, conveys a good title, where the evidence of good faith overcomes the presumption, declared by Rem. 1923 Sup., § 10582-b, that such a minor holds in trust for the alien.

Same (3). While an alien's deed of gift to his minor son, and the creation of a trust for the son's benefit, made just prior to the taking effect of the alien land act, must be closely scrutinized, such an arrangement is not necessarily fraudulent; the gift being beneficial, an acceptance is presumed; and as fraud must be proven by clear and convincing evidence, the trial court's findings of good faith are supported, where it appears that the alien parents have completely divested themselves of all title and right to control the land, and were employed by trustees of the minor son to work the land for his benefit.

Mitchell, J., dissents.

Appeal from a judgment of the superior court for King county, Davidson, J., entered April 25, 1923, in favor of the defendants, in an action to escheat alien lands, tried to the court. Affirmed.

*Malcolm Douglas, Ewing D. Colvin,* and *Arthur Schramm, Jr.,* for appellant.

*Pierce Lonergan, H. A. P. Myers,* and *Poe, Falknor, Falknor & Emory,* for respondents.

Holcomb, J.—This is an action brought under the alien land law, ch. 50, p. 156, Laws of 1921 [Rem. Comp. Stat., § 10581], and the amendment thereto,

[1]Reported in 234 Pac. 5.

ch. 70, p. 220, Laws of 1923 [Rem. 1923 Sup., § 10582-a], to escheat certain land alleged to have been held in trust for aliens, contrary to the constitution and statutes of the state. It was tried before the court without a jury, which found in favor of the defendants, respondents here.

The complaint alleged that Kosai and his wife were aliens, subjects of the Empire of Japan, and had not declared their intention to become citizens of the United States; that they were, in truth and in fact, the owners of the land described in the complaint, which was agricultural land and capable of being used for agricultural purposes only, and had been such owners for a long period of time, contrary to the constitution and statutes of the state; that the record title to the land stood in the name of the defendants Lonergan and Osawa, as trustees, the nature of the trust being unknown to the pleader except that it was alleged that the trust was, in truth and fact, for the benefit of Kosai and wife, although it was claimed that the same was held for the benefit of a minor child of the Kosais named Frank Kosai. It is further alleged that the defendant Julia Janisch held a mortgage on the land for $7,500, to secure a note given by one Street. The complaint prayed that the trust referred to be declared to be for the benefit of T. K. Kosai and wife, subject to the constitution and statutes of the state, and that the land be escheated and forfeited to the state.

To this complaint all of the defendants except Julia Janisch answered, wherein it was admitted that T. K. Kosai and wife were aliens, but alleged that Frank Kosai was an American-born and a citizen of the United States; that Pierce Lonergan was his guardian *ad litem*; that S. Osawa was a citizen of the United States; admitted that the land involved was in King county, but denied that it was suitable solely for agri-

cultural purposes; alleged that Lonergan and Osawa held the title in trust under a declaration dated June 7, 1921, for the benefit of Frank Kosai, a minor, and that T. K. Kosai and wife had no interest in the land or held any title thereto, and denied that T. K. Kosai and wife have owned the land as alleged in the complaint; admitted the mortgage of Julia Janisch to secure the note described, but denied that the mortgage was obtained by connivance of T. K. Kosai and wife, S. Osawa and Pierce Lonergan, as was alleged in the complaint. Julia Janisch filed a general appearance in the case, and it was verbally agreed between her counsel and counsel for appellant that inasmuch as she was an innocent holder of the note and mortgage, whatever interest the state should acquire as a result of the action would be subject to her mortgage. Upon these issues the case went to trial. At the trial, an amendment was made in the prayer of respondents to their affirmative answer for quieting title in the trustees in and to the trust estate.

Appellant served and filed seventy-nine interrogatories on respondents, the trustees, and on Kosai, which, together with the answers thereto, were, at the time of trial, introduced in evidence. From the answers to the interrogatories it appears that the land in controversy is agricultural land and is being operated as a dairy farm. Respondents T. K. Kosai and wife, together with their family of five children, of which Frank Kosai is the eldest, and is nine years of age, reside thereon. At the time, one W. T. Behne held title to the land for the benefit of respondent T. K. Kosai, having acquired it by deed from one Kleinberg. On June 7, 1921, Behne mortgaged the land to one Bills to secure the payment of two notes signed by T. K. Kosai, due in four and six months, respectively, Behne having held title to the land for

several years preceding, and T. K. Kosai having an equitable beneficial interest therein. The mortgage to Bills was satisfied and discharged by money obtained on the mortgage to Julia Janisch by the trustee. In their answers to interrogatories, the trustees and Kosai denied that T. K. Kosai was in the actual occupation of the land, but asserted that Lonergan and Osawa, as trustees, were operating the land, conducting a dairy farm thereon. They stated that the gross income from the land from the date it was taken over by the trustees, June 7, 1921, to September 12, 1923, was $16,558.79, and that the expense of operation was $15,797.87, leaving a net balance of $706.92; that T. K. Kosai was not running the dairy farm, but was employed by the trustees as foreman and milker at a monthly salary of $100; that the trustees had paid nothing on account of the purchase price of the land, all having been paid by T. K. Kosai prior to the date of the formation of the alleged trust.

The declaration of trust will not be set forth in full herein, but recites, among other things, that the trustees are the grantees named in a certain deed from W. T. Behne of the same date, June 7, 1921, conveying to the trustees in trust certain lands and buildings in King county, Washington, and declaring and agreeing that the trustees will, and their heirs and successors shall, hold the granted premises, and all other funds and property at any time transferred to and received by the trustees, upon certain specified conditions, among others, that they may convert the same into money and distribute the net proceeds thereof among the persons at the time of such conversion holding and owning a beneficial interest therein, it being understood and agreed that the trustees may, in their uncontrolled discretion, defer or postpone such conversion or distribution, but not beyond the end of twenty years from

January 6, 1916. It is also declared that the trustees, pending final conversion and distribution of the property, should manage and control the same for all purposes of sale, lease, mortgage, exchange, improvement and development or any and all arrangements contracts, and dispositions of the trust property, or any part thereof, with as full discretionary powers and authority as they would have if they were themselves the sole and absolute owners thereof in fee simple. It is recited that T. K. Kosai and Smi Taemae Kosai, his wife, had made an absolute, unrestricted and unqualified gift to Frank Kosai, a minor, and therefore the trust was declared in his favor, and for the benefit of Frank Kosai, a minor. It is declared that the trustees should have authority to loan and borrow money and fix the terms of any lease and of any pledge, mortgage or other security they might deem wise. It is provided that the trustees should at all times keep full and proper books of account and records of all their proceedings and doings. It is provided that the trustees should receive reasonable compensation for services, not exceeding a total of one per cent reckoned upon the gross income received by them, but in no event to receive less than $50 per year each. It is provided that the trustees should be entitled to reimbursement from the trust property for all their proper expenses and liabilities, including advice of counsel and traveling expenses and contracts of insurance and loans. It is provided that for convenience the title of the trust shall be the "Frank Estate," and the term "trustees" in the instrument shall be taken to include the original and all successor trustees.

On the same day the declaration of trust was executed, T. K. Kosai and wife made a deed of gift covering the land involved herein to their minor son, Frank

Kosai, which recited that W. T. Behne had been hold-
ing the property described in the deed in trust for the
grantors, and that it was the desire of the grantors
that their minor son, Frank Kosai, have absolute, full,
equitable title to, and benefit of, the described real
estate. The consideration therefor was expressed as
mutual love and affection. It was also expressed in
the deed that Behne, the grantor, had conveyed to
Lonergan and Osawa, trustees under the declaration
of trust dated June 7, 1921, the terms of which declara-
tion were referred to in the deed and made a part
thereof and approved by the grantors. It was then
expressed in the deed that it was the intention and
desire of the grantors to make an absolute, free, and
unincumbered and unrestricted gift of the property
to their minor son, without condition or reservation,
according to the terms of the trust declaration.

Appellant contends that the facts shown at the trial
of the case disclose the following badges of fraud, and
a studied, deliberate plan to fraudulently evade the
alien land law:

(1) Continued possession, dominion and occupation
of the land by Kosai and wife;

(2) The immediate and continued employment of
Kosai by the trustees;

(3) Receipt from the farm in wages and otherwise,
of all the proceeds of the farming industry conducted
on the land;

(4) Other transactions with the trustees of a similar
nature at approximately the same time;

(5) Concealment and failure to record the declara-
tion of trust;

(6) Failure to enter in the books of the trust all
assets and liabilities at the time or prior thereto, and
other discrepancies in the bookkeeping.

The trial judge, after having seen all the witnesses and heard them testify, made and filed the following very able and unimpassioned memorandum opinion:

"I have examined the brief of plaintiff and defendant submitted to me after the trial, considered the propositions of law advanced and the respective citations thereunder and find there is no serious difference between counsel for plaintiff and counsel for defendant as to principles of law governing this case.

"The burden of proof finally devolves upon plaintiff to establish fraud as alleged in its complaint. The statute, Chap. 70 of Laws of 1923, it is true, says that when certain facts are proven the court may presume fraud. This I take it to mean that by proving certain facts unexplained that the law presumes the fact of fraud to be established. But when evidence is given which overcomes the prima facie case so made, the burden of proof shifts and is finally upon the plaintiff to establish fraud. In the absence of fraud the things done by defendants in the disposition of the real estate involved was legal. Defendant Frank Kosai, to whom the land was deeded, was born in this country and at the time the property was deeded to him a citizen of the United States.

"As to the legal phases of this case, the propositions of law advanced by defendants I believe to be established by the authorities cited, that is to say: (1) 'An alien may transfer a good title to real estate to any person entitled to hold it, if no proceeding has been taken by the state for the purpose of setting aside the deed to the alien.' (2) 'All persons born in the United States are citizens thereof.' (3) 'The gifts being beneficial, an acceptance is presumed.' (4) 'And the fact that the father secured the transfer to his minor child for the reason that he could not hold title himself on account of being an alien, in itself is not fraudulent, the minor being at the time a citizen.' I am led to believe that these propositions of law are not controverted by counsel for the state.

"The question remaining is, was the transaction, legal on its face, *bona fide*. While the legal title stands

in the name of defendant minor, Frank Kosai, by declaration of trust the management of the property is vested in defendants S. Osawa and Pierce Lonergan as trustees. The father and mother of defendant Frank Kosai, according to the evidence, have been employed by the said trustees since the transfer was made to farm the land involved, and during said time have lived upon said land and worked the same under the supervision and direction of the trustees, and has accounted to the trustees for any produce he may have personally disposed of. I will state here that practically all of the testimony given on this phase of the case, or in fact all phases of the case, was given by defendants, both the state and the defendants using them.

"The state's contention being that Chuski Kosai and wife were farming the land as their own and receiving all revenues therefrom, and defendants contending that they were mere employees of the trustees and working for a fixed salary per month.

"I have considered this testimony with as much care as possible and conclude that the authority given to and exercised by the father and mother were no more than is ordinarily given to the foreman of a ranch, and that the activities of said Chuski Kosai are not inconsistent with such character of employment.

"Counsel for the state contend that the deed of gift from Chuski Kosai and wife to defendant Frank Kosai not having been acknowledged and recorded, is invalid. This contention might be considered if Chuski Kosai and wife had held the legal title to the land. The only purpose of this paper is to show that Kosai and wife gave their consent to the transfer of the legal title, and whether acknowledged or not, the writing forever stops them from questioning the transfer.

"One more question is raised by counsel for the state by which they question the *bona fides* of the transaction for the reason that the deed and declaration of trust were not filed until a few weeks before the case came on for trial. While this is a circumstance to consider, and which I have considered, I feel that that alone should not stamp the transfer as fraudulent.

" 'Fraud is never presumed. It must be proven by clear and convincing testimony and it is the duty of the court to harmonize all of the facts with honest intention and honest conduct, if that can be done.' I think this rule is fairly and fully established. Testimony uncontradicted and unimpeached cannot be disregarded by the court. Mere suspicions and speculations without tangible evidence are not acted upon in determining grave questions between litigants. I am thoroughly in accord with cases on fraud cited by counsel for the state from our own supreme court and courts of other jurisdictions. I am also in accord with an excerpt of a decision rendered by my distinguished brother, Judge Hall, of the superior bench of King County, contained in the brief of counsel for the state. As a pronouncement of abstract law and ethics I consider it sound and able and well worthy of such an able and conscientious jurist. Not having the facts of that case before me, I cannot apply it to the instant case.

"For the foregoing reasons I find for the defendants, and recalling the request made by counsel for defendants, that they be permitted to amend the prayer of their answer for a decree quieting title to the lands in defendant Frank Kosai, I grant that request and direct that the decree be drawn to conform herewith.' "

Having had some experience in attempted evasions of the alien land law (*State v. O'Connell,* 121 Wash. 542, 209 Pac. 865, and *In re Fujimoto,* 130 Wash. 188, 226 Pac. 505), we are naturally somewhat skeptical of any arrangements made before the alien land law went into effect as to the good faith thereof; but each case must depend upon its own facts and the law applying to those facts. It is admitted by respondents in this case that all the moneys for the original acquisition of the land in controversy was furnished by T. K. Kosai, either directly or by way of a loan; that W. T. Behne held legal title to the land up to June 7, 1921, for the benefit of T. K. Kosai. The land law went into effect June 10, 1921. Up to that time the state had

taken no steps to escheat the land, this proceeding having been commenced in May, 1923. It must be granted that Kosai and wife had the right to dispose of the property, either by gift or sale, up to the time the state proceeded to escheat it under the alien land law. We have so held in a number of cases. *Oregon Mortgage Co. v. Carstens,* 16 Wash. 165, 47 Pac. 421, 35 L. R. A. 841; *Keene v. Zindorf,* 81 Wash. 152, 142 Pac. 484; *Prentice v. How,* 84 Wash. 136, 146 Pac. 388.

A number of other cases also decided the same proposition between the *Carstens* case and the *Zindorf* case. It was thoroughly established, as stated in the *Carstens* case, *supra,* and followed in all the other cases, that "an alien may transfer a good title to any person entitled to hold it, if no proceeding has been taken by the state for the purpose of setting aside the deed of the alien."

It is admitted that Frank Kosai, the son, was born in this state, and is therefore a citizen of the United States and of this state. Fourteenth Amendment U. S. Constitution. A citizen of the United States and of this state is entitled to hold legal title to property, both real and personal, even though his parents are Japanese who can never become citizens. One citizen is as much entitled to the protection of the laws, both Federal and state, as another.

The record incontrovertibly shows that an absolute, unrestricted and unqualified gift was made by his alien parents to Frank Kosai, a minor. The gift being beneficial, an acceptance may be presumed. 31 C. J. 1024.

The law is also well settled that fraud is never presumed and must be proven by clear and convincing evidence, and it is the duty of courts to harmonize the facts with honest intention and honest conduct, if that can be done. *Tacoma v. Tacoma Light & Water Co.,*

16 Wash. 288, 47 Pac. 738; *Nath v. Oregon R. & Nav. Co.,* 72 Wash. 664, 131 Pac. 251; *Jarvis v. Ireland,* 89 Wash. 286, 154 Pac. 455; *German-American Mercantile Bank v. Illinois Surety Co.,* 99 Wash. 9, 168 Pac. 772. Appellant relies largely, however, upon ch. 70, Laws of 1923, p. 220, the second section of which provides:

"If a minor child of an alien hold title to land either heretofore or hereafter acquired, it shall be presumed that he holds in trust for the alien." Rem. 1923 Sup., § 10582-b.

Respondents, on the other hand, insist that that provision is unconstitutional as discriminating against a minor citizen whose parentage is alien, and that it is in violation of the fourteenth amendment to the United States constitution. While we have some doubt as to the validity of that provision, it is not necessary to pass positively upon it. The trial court having found that the presumption so raised by the statute was overcome by positive and credible evidence, and there being no evidence to the contrary, we feel bound by the determination of the trial court. The matter before us is largely a question of fact.

While there are some suspicious circumstances existing in this case, we cannot say that they are any more than suspicious circumstances. Most of the testimony given in this case was given by the trustees themselves and Kosai and Kosai's banker, Behne. We can find in the entire record no evidence, facts or circumstances, sufficient to preponderate against and overcome the determination of the trial court.

While courts should scrutinize very carefully every arrangement like this, for the reason that the law abhors subterfuge, not every such arrangement can be said necessarily to be fraudulent. So far as the

potentialities are concerned, the title to the land in question has forever passed from the aliens and to their minor son, an American citizen. The alien parents can never revest themselves with title. They can never become citizens of the United States.

The life of the state is theoretically perpetual, and doubtless, at any time in the future, if it be believed that the aliens, who are not entitled to hold land in this state, are absorbing it or the proceeds thereof belonging to their son, proceedings can be begun by way, perhaps, of office found, to inquire into the conditions surrounding this trust and have proper action taken in the premises.

The attorneys for the county and state have made a vigorous and commendable effort in having this trust investigated and judicially passed upon. Under the alien land law of 1921, it is made the duty of the prosecuting attorneys and of the *Attorney General* to do so. The fact that they have failed upon the facts of the case is not to their discredit.

Counsel for appellant asserts that, if this case is affirmed, then not only the parties to this action, but all other similar trusts created by the trustee respondents herein at the time this law was about to take effect, will continue to successfully evade our constitution and statutes, and under the authority of such decision large numbers of aliens will avail themselves by adopting that means of owning, holding, controlling and managing our land. We repeat that every such case must stand upon its own facts. No arrangement which was made after the going into effect of the alien land law and the commencement of escheat proceedings could be of any force, and all arrangements made before that must be examined and investigated by the officers charged by the law with such duty, and proceedings begun or withheld at their discretion.

Counsel paraphrases a quotation from Shakespeare as follows:

" 'Twill be recorded for a precedent, and many an alien, by the same example, will rush into the state and hold the lands thereof. It cannot be."

But we rather prefer to invoke the philosophy of the wise and just Lincoln, who was probably a better authority than Shakespeare on law and statemanship: "Let us have faith that right makes might, and in that faith let us, to the end, try to do our duty as we understand it."

In any event, the state, although mighty, cannot insist upon the allegiance of all its citizens unless it deals justly with all its citizens, and it cannot deal justly if it confiscates the property of its own citizens without just reason.

The judgment is affirmed.

TOLMAN, C. J., FULLERTON, and MACKINTOSH, JJ., concur.

MITCHELL, J., dissents.