[No. 19173.   Department One.   November 3, 1925.]

THE STATE OF WASHINGTON, *Appellant,* v. RYOTON
KURITA *et al., Respondents,* WESTERN AMERICA
REALTY COMPANY, *Defendant.*[1]

ALIENS (5-1)—FRAUD—REAL PROPERTY — ACTION TO ESCHEAT —
FRAUD—EVASION OF STATUTORY RESTRICTIONS—EVIDENCE OF FRAUD—
SUFFICIENCY. Findings in favor of defendant in an action to escheat
lands owned by an alien, that there had been no evasion of the
statutory restrictions against ownership, are sustained, where land,
contracted to an alien, was conveyed to a corporation and mortgaged,
shortly before the alien land law of 1921 took effect, and the facts
were consistent with an honest purpose to dispose of the land,
which could lawfully be done prior to the act of 1921; since fraud
is never presumed, but must be shown by clear and convincing proof
(TOLMAN, C. J., dissenting).

Appeal from a judgment of the superior court for
King county, Smith, J., entered December 13, 1924,
upon findings in favor of the defendant, in an action
to escheat lands owned by an alien, after a trial to the
court.   Affirmed.

*Ewing D. Colvin,* for appellant.

*Guie & Halverstadt* and *W. Mervyn Williams,* for
respondents.

MAIN, J.—The state brings this action for the pur-
pose of escheating seven and one-half acres of land, in
King county, which it claims is owned by Ryoton
Kurita, an alien, who has not declared his intention of
becoming a citizen of the United States.   The trial was
to the court without a jury, and resulted in a judgment
dismissing the action from which the state appeals.

The land in question is suitable for agricultural pur-
poses, and is located approximately two miles east of
Lake Washington.   On October 27, 1909, W. E. Con-

[1]Reported in 240 Pac. 554.

way and wife, being then the owners, contracted to sell the seven and one-half acres of land to Kurita who was then and was at the time of the trial a subject of the Emperor of Japan. The purchase price was two thousand five hundred dollars, one thousand dollars of which was paid at the time and the balance in annual installments of two hundred and fifty dollars each. On March 25, 1911, the Conways deeded the land subject to the contract to W. E. Greenway. Greenway held it for approximately two years, when he conveyed it to Mrs. M. A. Young, subject to the contract. On June 29, 1915, Mrs. Young conveyed it to the Mountain View Agricultural Company, a corporation.

All of the installments on the contract were paid either to Conway, Greenway or to Mrs. Young, the last installment being paid in June, 1915. It appears that, when this payment became due, Kurita was unable to meet it, and for this purpose he sought money from the Mountain View Agricultural Company. He assigned his contract to that corporation, received eight hundred dollars in cash, which was secured by a first mortgage to Agnes Feeney, out of which he paid the two hundred and fifty dollars installment and took a second mortgage for two thousand five hundred dollars. Shortly after this transaction, he, with his family, moved off the land and for a number of years he worked in a saw mill at Snoqualmie. At that time, the officers of the Mountain View Agricultural Company were fellow countrymen of Kurita. At the time of the trial, these men were in Japan and had been for some time. Kurita paid the taxes on the land until the year 1915. The mortgage for two thousand five hundred dollars provided against a deficiency judgment. Upon this mortgage, some interest payments were made.

On May 29, 1919, the Mountain View Agricultural Company conveyed the land in question to the Western

America Realty Company, a corporation organized under the laws of the state of Washington of which Walter A. Keene was the sole stockholder, with the exception of certain qualifying shares for the other officers. On May 2, 1921, the Western America Realty Company conveyed the land to the Enterprise Investment Company, a corporation of which Mr. Keene was the sole stockholder as in the other corporation. On the same day, Kurita made a quitclaim deed to the Enterprise Investment Company. On May 2, 1921, the Enterprise Investment Company gave a mortgage to the Western America Realty Company for the sum of two thousand dollars and a check for two hundred and fifty dollars, which mortgage was assigned to Kurita and he received the two hundred and fifty dollars. Soon thereafter, the Western America Realty Company was disincorporated. In January, 1921, by the permission of Mr. Keene, Kurita went into possession of the land and later took a lease on it for two years. He vacated the property again in November, 1923.

The question to be determined is whether the Mountain View Agricultural Company took title to the land in good faith, and whether the title was so held by the Enterprise Investment Company. In other words, was Kurita the real owner of the property and these corporations mere dummies for the purpose of holding the title for an alien and thereby circumventing § 33 of article 2 of the constitution of this state? The question presented is one of fact. The state in its brief invites us to adopt, as a premise, the earlier declarations of this court to the effect that it was the intention of the constitutional provision referred to to prohibit the ownership of land by aliens and

". .. . that it should be prohibited despite of subterfuges which might be resorted to by aliens for the purpose of becoming such owners; and we have al-

ready seen the wisdom of the makers of the constitution in clothing this article in language which is so plain that it is not susceptible of judicial construction." *State ex rel. Winston v. Hudson Land Co.*, 19 Wash. 85, 52 Pac. 574, 40 L. R. A. 430.

Also, that, in cases like this, the original purpose must not have been to acquire title to the lands under the guise "of a mortgage loan, but must have been in good faith to make the loan as a loan, and the mortgage taken as an incident merely to secure its payment, and the land acquired in good faith thereunder." *Oregon Mortgage Co. v. Carstens*, 16 Wash. 165, 47 Pac. 421, 35 L. R. A. 841.

With the doctrine of these two decisions, we are fully in accord. If the alien is holding the land in violation of the constitutional provision against such ownership, this amounts to a fraud, and in such cases the rules applicable to fraud should be applied. *State v. Kosai*, 133 Wash. 442, 234 Pac. 5. It may be well to here recapitulate some of the well known propositions of law as applied to fraud cases.

As a general rule, the presumption of law is that men act honestly and not fraudulently. Fraud is never presumed and must be established by clear and convincing proof. It is not necessary that there be direct and positive proof of fraud, but it may be inferred from circumstances and it cannot be established by mere suspicion or conjecture. Where the facts and circumstances are lawful in themselves and consistent with an honest purpose, proof of fraud is wanting. *Pederson v. Seattle Consol. Street R. Co.*, 6 Wash. 202, 33 Pac. 351, 34 Pac. 665; *Tacoma v. Tacoma Light & Power Co.*, 16 Wash. 288, 47 Pac. 738; *Nath v. Oregon R. & Nav. Co.*, 72 Wash. 664, 131 Pac. 251; *Jarvis v. Ireland*, 89 Wash. 286, 154 Pac. 455; *Dunlap v. Seattle National Bank*, 93 Wash. 568, 161 Pac. 364.

In the present case, there is no direct or positive evidence that the transaction was not one in good faith. There is no conflict in the evidence. The direct evidence, so far as it goes, supports the good faith of the transaction. If fraud is to be found, it must be inferred from the facts as they appear in the record; but when all the facts are taken into consideration, we have been unable to find anything which is not consistent with an honest purpose. The appellants points out specifically certain facts, and argues from these that the transaction was not in good faith. The point made about accepting a mortgage for two thousand dollars and two hundred and fifty dollars cash in lieu of a two thousand five hundred dollar mortgage was explained by Kurita by saying that he had lost his other mortgage and he thought best to settle the transaction in this way. It is true that all the conveyances had been made a matter of record, but this was a fact of which Kurita was not cognizant. He, of course, was the chief witness, Mr. Keene having died some time prior to the trial. Kurita testified through an interpreter. The state argues that he is more intelligent than he pretended and probably in his behalf his illiteracy is somewhat emphasized. In any event, as the testimony appears in the record, we cannot say that it is unworthy of belief and therefore disregard it.

The final transaction took place shortly before what is known as the alien land law, passed by the legislature at the 1921 session, took effect; but, as stated in *State v. Kosai, supra,* an alien had a "right to dispose of property, either by gift or sale, up to the time the state proceeded to escheat it under the alien land law. We have so held in a number of cases."

Some questions are presented upon the rulings of the trial court in receiving and rejecting evidence, but we find no error in this regard. The case having been

tried without a jury, this court will disregard any evidence that it may deem immaterial. As to the rejected evidence, had it been admitted, it would not have changed the result. It is not to be inferred from this that we think the trial court erroneously rejected legal evidence.

The judgment will be affirmed.

Parker and Holcomb, JJ., concur.

Tolman, C. J. (dissenting)—I agree with the majority that there is involved here a question of fact only, and that fact is the good faith or the fraudulent intent of the parties concerned.

I also agree that fraud is never presumed and must be established by clear and convincing proof, but that direct and positive proof of fraud is seldom obtainable and it may be inferred from the circumstances.

My reading of the record convinces me, beyond all doubt, that, in this case, the fraudulent purpose was as clearly established as it is humanly possible to establish any fact where the parties concerned deny or seek to conceal it. I cannot read the record detailing the vermiculation indulged in without reaching the conviction that the only purpose was to avoid or violate the Alien Land Law.

I therefore dissent.