[No. 29161. Department Two. February 9, 1944.]

ANTOINETTE M. SAUNDERS, *Respondent,* v. GRACE VISSER, *Appellant.*[1]

[1]Reported in 145 P. (2d) 898.

*Lloyd R. Savage* and *Eli M. Paulson,* for appellant.

*Kerr, McCord & Carey,* for respondent.

BLAKE, J.—Plaintiff brought this action to impress a trust upon land near Coulee City, Washington. The land was purchased February 9, 1932, on contract, by plaintiff's deceased brother, W. G. Visser, from the North Pacific Mortgage Company. The contract price was $6,500. The contract recites a down payment of $1,500. The actual cash paid, however, was $1,275, the vendee being credited with $225 for taxes assumed and commission earned. The balance of the purchase price was paid from proceeds of sales of parcels of the land. Having paid the purchase price in full, Visser caused a deed to be executed and delivered by the vendor to his wife, Grace Visser, the defendant. The deed is dated June 26, 1939. Visser died in August, 1940.

Plaintiff brought this action in November, 1941, against Grace Visser to impress a trust on the portion of land remaining and for an accounting of the proceeds of the land sold. The gist of the cause of action set up in the complaint is contained in the following allegation: "About the month of May, 1932, the said W. G. Visser, having in his possession the sum of $1000.00 arising from the collection of certain securities belonging to and being the property of plaintiff, invested said sum in the purchase of certain real property located in Grant County, Washington, hereinafter referred to as Coulee Dam property . . .; and falsely and fraudulently pretending that the defendant Grace Visser had also contributed the sum of $1000 toward the purchase of said premises executed and delivered to the plaintiff a certain statement in writing in words and figures following:

"May - 5 - 32

"Mrs. A. V. Saunders

"This is to certify that I am holding, awaiting your instructions, Benj. Franklin Bond No. 282 in the sum of $1000.00 and Washington Athletic Club Bond No. 526 in the sum of $500.00.

"I also hold in my name 440 acres of land adjoining Coulee City, Wash. and 275 lots in Coulee City itself. In this you have a half interest, the other half belonging to Grace (Mrs. W. G. Visser). The money for the purchase of your interest $1000.00 was derived from the proceeds of the Lewis & Clark Bonds. W. G. Visser."

At the trial plaintiff renounced her claim to more than a half interest in the land remaining and in the proceeds of the land sold. The court entered a decree establishing plaintiff's claim as thus modified and requiring defendant to account for "all receipts from any of the said properties or contracts for the purchase or sale thereof that have come into her hands or under her control since the 28th day of August, 1940"—the date of W. G. Visser's death. Defendant appeals.

Respondent bases her right to relief solely upon the theory of a constructive trust.

Through a period of several years prior to 1932, respondent had committed to her brother, W. G. Visser, various substantial sums of money for investment. According to a bill of particulars furnished by her, he had, at the time the contract for the Coulee dam property was entered into, invested for her some fifteen thousand dollars in the following securities: Hotel Washington bonds, $1,000; Lewis & Clark Hotel Company bonds, $1,500; John Alden Apartment bonds, $1,500; Cambridge Apartment bonds, $1,000; Mayflower Building bonds, $3,000; Washington Athletic Club bonds, $500; Benjamin Franklin Hotel bonds, $1,000; and Bancorporation stock, $6,000.

The theory of the complaint seems to be that W. G. Visser sold the Lewis & Clark bonds, or some other of these securities, and invested the proceeds in the Coulee dam property. Notwithstanding Visser referred to the sale of

the Lewis & Clark bonds in his letter to respondent of May 5, 1932, we find nothing in the record to warrant the conclusion that they were ever sold; nor do we find any evidence to indicate that any of the other securities enumerated in the bill of particulars were sold by either Visser or respondent. Indeed, implicit in the record is the fact that, even at time of trial, respondent still owned those securities. Testifying, she abandoned the theory of the complaint in its entirety. She testified:

"MR. SAVAGE: I asked whether she had personal knowledge of the $1,000 going into the Coulee property. Q. I will ask you to state what that knowledge was. A. The knowledge came because he wrote me about it. Q. When he wrote you was it this letter of May 5, 1932, Plaintiff's Exhibit '3'? Just look that over (handing to witness). A. I just heard that a few minutes ago. Q. Is that the basis of your knowledge that he put $1,000 of your money in the Coulee property? A. No, sir. He wrote me he had done it. Q. Is the letter here? A. No, sir. I didn't hold all his letters. Q. When was that letter received? A. Right after I let him have the money. I didn't even ask him for a receipt. I sent the money and that is all there was to it. Q. How much money did you send him? A. On that I sent $1,000.00. Q. Did you send $1,000.00 cash? A. No, sir. He wrote about that time. You read it. Q. Did you send him $1,000 cash to put in it? A. No, sir. Q. What did you give him? A. I think I sent him a check. I am not certain. It is too long ago. It would not make any difference to me how I sent it. THE COURT: How much money did you send him represented by a check? A. $1,000.00."

Respondent's testimony is incredible and utterly lacking in corroboration. In the light of it, it is apparent that she failed to prove that money of hers from any source went into the purchase price of the Coulee dam property, for the down payment on the contract had been made three months before she knew anything about it, and all subsequent payments derived from proceeds of sales of property.

We think the trial court implicitly recognized the failure of respondent to prove that the proceeds of any particular securities of hers went into the purchase price of the

62

Coulee dam property, for, in rendering its decision, the court observed:

"There is no doubt that for years there was a relation of trustee and *cestui que trust* finally. I am bound to conclude that she had money invested in bonds *or some other securities or stock* here. *I am bound to conclude that from some course [source], I don't care whether it was from Lewis and Clark or what it was from,* he got hold of a thousand dollars of her money." (Italics ours.)

Now, it must be remembered that this is an action to establish a constructive trust. It is not an action against a trustee (or his estate) for an accounting of trust funds where the burden would be on the trustee to render a complete and faithful report; nor is it an action to enforce an express trust. Respondent does not contend that there was an express trust; indeed, such a contention could be of no avail in the face of this court's decision in *Pacheco v. Mello,* 139 Wash. 566, 247 Pac. 927.

Fraud is the essence of an action to establish a constructive trust. *Farrell v. Mentzer,* 102 Wash. 629, 174 Pac. 482; 1 Pomeroy's Equity Jurisprudence (5th ed.), p. 209, § 155; 4 id. 93, § 1044; 26 R. C. L. 1232, § 78. In the latter text it is said:

"Constructive trusts are such as are raised by equity in respect of property which has been acquired by fraud, or where, though acquired originally without fraud, it is against equity that it should be retained by him who holds it. They arise purely by construction of equity, independently of any actual or presumed intention of the parties to create a trust, and are generally thrust on the trustee for the purpose of working out the remedy. *The trusts are not what are known as technical trusts, and the ground of relief in such cases is, strictly speaking, fraud, and not trust.*" (Italics ours.)

Fraud is never presumed. It must be established by evidence clear, cogent, and convincing. *Hahn v. Brickell,* 135 Wash. 189, 237 Pac. 305.

The fact that a fiduciary relationship existed between respondent and her brother is not in itself sufficient to justify an inference of a breach of trust on his part. The

only evidence to justify such an inference is his letter of May 5, 1932, and subsequent letters referring to respondent's interest in the Coulee dam property. We do not think the inference warranted on this evidence, because, as we have stated, it is implicit in the record that the Lewis & Clark bonds were *not* sold; and, further, because appellant established by more than reasonable certainty that she furnished from her own separate funds practically all the cash that went to make the down payment on the Coulee dam property. On January 22, 1932, she sold seventy-three shares of Marine Bancorporation stock for $1,020. On January 25, 1932, Visser paid $125 as earnest money on the contract. On February 11th, he paid an additional $1,150. (As before stated, he received credit for the balance of the $1,500 down payment on account of real estate commission allowed and taxes assumed.)

In its ultimate, respondent's case rests upon the inference of a breach of trust—the misappropriation of her securities or funds—by Visser simply because, in the letter of May 5, 1932, and in subsequent letters, he referred to her interest in the Coulee dam property. We have read these letters, which cover the period from May 5, 1932, to May 21, 1940, with more than passing interest. To us, they reveal the anguish of a man broken in body and spirit but of unblemished integrity—one who was faithful rather than unfaithful to his trust, and one keenly sensitive to his obligations as husband and brother. In 1932, not only the investments he had made for his sister but also those he had made for himself and his wife had been deflated to the vanishing point. He thought he saw an opportunity to recoup in the prospective boom at Coulee dam. What could be more natural than a desire and an attempt on his part to carry his sister for a half interest in the deal? He would not be the first trustee who attempted on his own to carry a *cestui que trust* in an enterprise which might recoup losses from investments "turned sour." And, in 1939, when death was approaching and the deal had not proved as profitable as anticipated, what could be more natural than to abandon the attempt to carry his sister and cause the property to

be conveyed to his wife—the one who put up the cash that went to make the down payment on the purchase price?

While fraud may be proved by circumstantial evidence, it is not to be inferred from facts which are as compatible with an honest purpose as they are with an intent to defraud. *Tacoma v. Tacoma Light & Water Co.*, 16 Wash. 288, 47 Pac. 738; *State v. Kurita*, 136 Wash. 426, 240 Pac. 554; *Marrazzo v. Orino*, 194 Wash. 364, 78 P. (2d) 181. We are convinced that no money of respondent's went into the purchase price of the Coulee dam property. We are also convinced that her brother did not misappropriate any of her securities or funds.

The decree is reversed and the cause is remanded, with direction to dismiss the action.

SIMPSON, C. J., ROBINSON, GRADY, and MALLERY, JJ., concur.

*John Hancock*, for respondent.

[1]Reported in 145 P. (2d) 903.